IN RE FIGUEROA MAESTRE, QUERELLADO.

QUEJA presentada por el Attorney General de Puerto Rico para que sea separado el querellado del ejercicio de su profesión de abogado.

No. 8.—Resuelto en mayo 8, 1914.

ABOGADOS—DISBARMENT—REFEREE NOMBRADO POR LA CORTE PARA OIR LA PRUEBA.—Habiendo solicitado el Fiscal el nombramiento de un *Referee* para oir la prueba que se presentara en este caso, y no habiendo hecho oposición alguna el querellado, el tribunal lo nombró.

ID.—DISBARMENT—ACTOS DE UN ABOGADO SUFICIENTES PARA SEPARARLO DEL EJERCICIO DE SU PROFESIÓN DE ABOGADO.—Examinada la prueba presentada en este caso *se resolvió* que los siguientes hechos, suficientes para privarle del ejercicio de su profesión de abogado, habían quedado plenamente probados:

1. Que el querellado, sin el consentimiento de su cliente el demandante, transó un pleito sobre indemnización de daños y perjuicios, recibiendo de los demandados en concepto de precio de la transacción la cantidad de $150, la cual se apropió, negándose a entregarle a su cliente la mitad de dicha suma, que según el convenio celebrado entre ellos al cliente le correspondía la mitad de lo que se recobrara, sirviendo de base dicha transacción para la sentencia que dictó la corte inferior contra los demandados por dicha suma.

2. Que habiendo convenido el querellado con un cliente suyo en entablar una acción de divorcio le aconsejó que traspasara su finca a un tercero para que después de decretado el divorcio volviese la finca a él previo el pago de sus honorarios; que varias veces el querellado trató de obtener la firma de la esposa de su cliente para el traspaso de dicha finca, a lo cual ella siempre se negó y el querellado con el fin de cobrar sus honorarios hizo que su cliente le firmara un pagaré por la suma de $141.66 a favor de un tercero, cuyo pagaré fué escrito por el mismo querellado y la firma de dicho documento fué reconocida por su cliente ante el mismo querellado como notario público; que el pagaré fué endosado a un tercero y éste de acuerdo con un modelo preparado por el querellado presentó una demanda en cobro de dicho pagaré contra el cliente del querellado y embargó la finca, habiendo sido redactado el mandamiento de embargo por el mismo querellado y éste acompañó al márshal a la finca para practicar el embargo, el cual se suspendió a instancia del mismo querellado, y entonces éste fué a la casa de su cliente y le hizo firmar una escritura juntamente con la esposa haciéndoles ver que era un documento para levantar el embargo, cuando en realidad de verdad era la venta de la finca al tenedor del pagaré por la cantidad de $400 que nunca recibieron su cliente ni la esposa, y posteriormente el querellado permutó dicha finca por un autómovil valorado en $300 y después cambió éste por una pareja de caballos que luego vendió a otra persona.

Los hechos están expresados en la opinión.

Abogados del Pueblo: *Sres. Wolcott H. Pitkin, Jr., Attorney General de Puerto Rico* y *Charles E. Foote, Fiscal del Supremo.*

Abogados del querellado: *Sres. Jacinto Texidor* y *Manuel Benítez Flores.*

Referee nombrado por el tribunal: *Sr. Martín Travieso, Jr.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

El Attorney General de Puerto Rico compareció solicitando que el Letrado Francisco Figueroa Maestre fuera sepa-

rado del ejercicio de la profesión de abogado, por razón de los siguientes cargos:

*Primer cargo.*—Que en una acción civil por daños y perjuicios entablada en la Corte Municipal de Bayamón por Ceferino Bonhome contra Francisco Alamo y de Armas, Carmelo Rodríguez y Eusebio Villegas, y apelada para ante la Corte de Distrito del Distrito Judicial de San Juan, Sección Primera, dictóse sentencia el día 11 de marzo de 1912 a favor del demandante y en contra de los demandados, por la suma de ciento treinta y dos dollars, cincuenta y dos centavos, en virtud de una transacción convenida entre los demandados y el Licenciado Francisco Figueroa Maestre, abogado del demandante Ceferino Bonhome.

Que el día 10 de marzo de 1912 el Licenciado Figueroa Maestre, como abogado del demandante y en representación del mismo, recibió de Eusebio Villegas y de Carmelo Rodríguez la suma de ciento cincuenta dollars en pago y satisfacción completa de la sentencia dictada por la referida Corte de Distrito de San Juan, Sección Primera, en contra de los Sres. Rodríguez y Villegas.

Que después del día 10 de marzo de 1912, en tres distintas ocasiones, Ceferino Bonhome se avistó con el Licenciado Figueroa Maestre para reclamar la parte que le correspondía de la cantidad que dicho Figueroa Maestre había recibido de los Sres. Villegas y Rodríguez en pago de la sentencia dictada a favor del demandante por la Corte de Distrito de San Juan, Sección Primera, recibiendo por respuesta del Licenciado Figueroa Maestre una rotunda negativa de haber recibido cantidad alguna y la amenaza de llevarle a los tribunales si persistía en el cobro.

*Segundo cargo.*—Que allá por el mes de enero de 1913, en la Jurisdicción de Bayamón, el Licenciado Francisco Figueroa Maestre, Francisco Des Choudens y Carlos Nieves, voluntaria, ilegal, corrupta, fraudulenta y criminalmente conspiraron, se combinaron, se asociaron y se pusieron de acuerdo para estafar y defraudar en sus bienes a Carolina

Hernández, esposa de Leocadio Pintado, en la siguiente forma:

Leocadio Pintado, casado con Carolina Hernández, se avistó con el Abogado Francisco Figueroa Maestre para entablar divorcio contra su esposa; que a fin de no tener que darle a su mujer, Carolina Hernández, la mitad de sus bienes, por ser gananciales, el abogado Francisco Figueroa Maestre le aconsejó que traspasara sus bienes antes de iniciar el divorcio, para así no tener que darle nada a su mujer; y que por su mediación en el asunto y en el divorcio le cobraría $141.66; que aceptada la combinación por Leocadio Pintado, éste firmó un pagaré por valor de $141.66 a favor de Carlos Nieves, amigo del Figueroa Maestre, reconociendo por él deber a Carlos Nieves la citada suma que debía pagar en 31 de diciembre de 1912, y firmando el pagaré con fecha 10 de enero de 1912; que a fin de poder presentar la demanda para el cobro del citado pagaré y solicitar con ella el aseguramiento de sentencia sin necesidad de fianza, con fecha 6 de febrero de 1913, después de vencido el documento, aparece Leocadio Pintado, siguiendo las instrucciones de Figueroa Maestre, reconociendo ante él en su carácter de notario, la autenticidad de la firma estampada en el citado pagaré otorgado a favor de Carlos Nieves. Que al día siguiente, o sea el 7 de febrero, Carlos Nieves, de acuerdo con sus asociados Figueroa Maestre y Francisco Des Choudens, endosó el citado pagaré por valor recibido al susodicho Francisco Des Choudens, y ese mismo día Francisco Des Choudens entabla demanda ante la Corte Municipal de Bayamón contra Leocadio Pintado en cobro de la citada suma de $141.66, solicitando embargo de bienes del demandado en aseguramiento de sentencia.

Que con fecha 8 de febrero del mismo año el secretario libró copia de la orden de aseguramiento librada por el Hon. Juez de la Corte Municipal de Bayamón, y al día siguiente 9 de febrero el Francisco Figueroa Maestre, en representación de Francisco Des Choudens, requiere al márshal de la Corte Municipal para que le acompañe a efectuar el em-

bargo; que el márshal, en cumplimiento de su deber, se trasladó con el abogado Francisco Figueroa Maestre a la propiedad de Leocadio Pintado, radicada en el barrio de Cerro Gordo de la Jurisdicción de Bayamón, compuesta de siete cuerdas y setenta y cinco céntimos de otra, con dos casas y un rancho en ellas enclavadas. Que una vez allí comenzó las diligencias de embargo y sin terminarlas el márshal, a virtud de orden del Francisco Figueroa Maestre, éste invita a Leocadio Pintado y a Carolina Hernández para que al día siguiente concurrieran a su oficina para suspender y arreglar el embargo.

Que a virtud de esta invitación acudieron los citados cónyuges Pintado y la Hernández, al bufete del abogado Figueroa Maestre y allí y entonces, haciéndoles creer que iban a firmar un documento para levantar el embargo, les hizo firmar una escritura de venta otorgada ante él como notario público de la finca que poseían en el barrio de Cerro Gordo a favor de Francisco Des Choudens.

Que una vez traspasada la finca con engaño, dolo y fraudulentamente, el mismo Francisco Figueroa Maestre se la ofreció en venta a Bartolomé Joy, quien después de verla la compró por un automóvil valorado en $300, de cuyo automóvil se apropió Figueroa Maestre, quedando despojados los cónyuges Carolina Hernández y Leocadio Pintado de la finca de siete cuerdas setenticinco céntimos, con sus dos casas y el rancho en ellas enclavadas.

Dicho Letrado fué debidamente notificado para que compareciera el 9 de junio de 1913, en cuyo día presentó excepciones previas contra la querella, que fueron desestimadas. Anteriormente, o sea el 6 de junio de 1913, el Fiscal de este tribunal presentó una moción solicitando que en atención al gran número de testigos que habían de ser examinados se nombrara un *referee*. Al ser desestimadas las excepciones y en vista de que el demandado no presentó contestación ni objeción, ni se opuso al nombramiento del *referee*, se designó el abogado Sr. Martín Travieso como *referee* para que oyera

la prueba que fuera presentada por ambas partes y la remitiera a esta corte con sus conclusiones sobre el resultado de la misma.

Después de varias tardanzas inevitables, se presentó el informe del *referee* en esta corte, y después de haberse concedido tiempo razonable para la presentación de los alegatos, quedó el caso definitivamente sometido a nuestra consideración.

De los autos consta que además de la prueba testifical y documental presentada al *referee,* también se presentaron alegatos ante él.

En el informe del *referee* se declara probado en cuanto al primer cargo, que Ceferino Bonhome empleó al querellado para que entablara una acción por lesiones sufridas por Bonhome en una de las lanchas pertenecientes a los demandados, conviniendo en pagarle al querellado en concepto de honorarios el 50 por ciento de la cantidad que se recobrara; que el querellado entabló la acción en la corte municipal de Bayamón a nombre del demandante contra Rodríguez, Villegas y Alamo; que el juicio se celebró ante la corte municipal sin estar presente el demandante, y sin haberse presentado ningún testigo en su favor, por lo cual se dictó sentencia en su contra, la cual fué apelada por el citado Figueroa Maestre a nombre del demandante Bonhome para ante la Corte de Distrito de San Juan, pidiendo un embargo contra las lanchas de los demandados, a pesar de que él sabía que no tenía prueba para sostener la demanda; que después de señalado el caso en la corte de distrito el querellado entró en negociaciones con dos de los socios de la sociedad demandada, Villegas y Rodríguez, con el fin de obtener una transacción del pleito pendiente; que habiendo obtenido dicha transacción, los demandados Villegas y Rodríguez el 10 de marzo de 1912, por documento otorgado ante el Notario Artemio P. Rodríguez, convinieron en que se dictara sentencia en contra de ellos por dos dos-terceras partes de la cantidad reclamada, o sean $132.56; que esta transacción se hizo por el querellado

sin el consentimiento previo de su cliente; que en pago de las dos-terceras partes de la suma reclamada, y por cuyo montante con costas se registró sentencia con el consentimiento de la parte demandada, los demandados Villegas y Rodríguez dieron al querellado y él recibió la suma de $150 por la cual el querellado les entregó un recibo firmado por él, habiéndose efectuado el pago y el otorgamiento del recibo, el mismo día que se firmó la transacción, o sea el 10 de marzo de 1912, en casa de Carmelo Rodríguez, y después que el notario que dió fe de la transacción se había marchado; que al día siguiente de celebrada la transacción y de pagada dicha cantidad de dinero, la Corte de Distrito de San Juan dictó sentencia contra Villegas y Rodríguez por la suma de $132.52 y desestimó la demanda en cuanto al otro demandado Alamo; que el querellado fué requerido varias veces por su cliente Ceferino Bonhome para que le pagara la mitad que le correspondía de la suma que recibió, o sea $75.00 y que el querellado se negó a ello alegando que no había recibido nada y contestando al ser preguntado acerca del recibo que había firmado, que dicho recibo era un documento falso.

Hemos examinado cuidadosamente la prueba practicada y opinamos que sostiene las anteriores conclusiones del *referee*, excepto en cuanto al hecho del embargo de las lanchas que en vez de solicitarse en la corte de distrito, es lo cierto que se solicitó en la corte municipal. Este detalle carece de importancia, a nuestro juicio, a los fines de la apreciación del cargo imputado al querellado.

El *referee* en sus conclusiones no have deducción alguna del hecho de haber entregado el querellado después de terminada la vista, la cantidad de $75 al *referee* para que se la entregara a su cliente Ceferino Bonhome, pero sin embargo el *referee* declara que el primer cargo ha sido por completo probado.

El querellado no niega haber otorgado el recibo ni que se dictara sentencia a favor de su cliente, pero sostiene que que este recibo era un convenio efectuado entre él y Rodrí-

guez y Villegas con el fin de salvar la responsabilidad de
los fiadores de la fianza de embargo, pues el querellado se
había constituído personalmente responsable para con dichos
fiadores. Tanto para nosotros como para el *referee,* es difí-
cil comprender la necesidad de un trámite tan intrigado
cuando un simple convenio para desestimar el pleito sin cos-
tas o cualquier otro convenio privado hubiera sido suficiente.
En vista de la sentencia dictada y del otorgamiento del recibo,
el peso recayó sobre el querellado para explicar la existencia
de tales sentencia y recibo. Sus propias manifestaciones,
sin corroboración satisfactoria son demasiado inverosímiles
para que nos convenzan. Aun aceptando su teoría no había
necesidad de que otorgara ese recibo. El querellado sostiene
que celebró este complicado arreglo tal como quedó finalmente
consumado, con el consentimiento y aprobación de su cliente,
pero éste nos hace una historia completamente distinta que
en lo esencial no tiene nada de improbable y que está soste-
nida por el resto de la prueba. Villegas y Rodríguez, según
sostiene el querellado, se contradicen cada uno en su testi-
monio, y ambos entre sí, pero aunque hay contradicciones en
su testimonio en cuanto a épocas y sitios y forma de pago,
éstos son perfectamente claros y convincentes en cuanto al
punto principal, o sea, que ellos pagaron al querellado la suma
de $150, importe de la reclamación de su cliente contra ellos.
Para que pudiera creerse que los hechos no han sucedido tal
y como han sido demostrados por los testigos del Gobierno,
sería necesario que Bonhome, Villegas y Rodríguez, delibe-
radamente se hubieran combinado y confabulado para per-
judicar al querellado. Esta teoría no está sostenida ni aún
por el mismo querellado, aunque ataca la veracidad de los
testigos. No hay nada que demuestre un motivo para la exis-
tencia de esta confabulación; esto es más señalado en el caso
de los testigos Villegas y Rodríguez. Pero además no pode-
mos permanecer ciegos ante el hecho de haber entregado el
querellado la suma de $75 al *referee* para que este a su vez
la entregara a Bonhome. No es posible que aceptemos las

manifestaciones del querellado cuando sostiene que la entrega de este dinero fué un acto de mera magnanimidad.

Con respecto al segundo cargo el *referee* declaró probado lo siguiente:

1°. Que Leocadio Pintado, dueño de una finca de 7½ cuerdas, en el barrio de Cerro Gordo, solicitó los servicios del querellado para que le arreglara una cuestión pendiente con una vecina por motivos de colindancias, y al mismo tiempo para que lo divorciara de su esposa Carolina Hernández. Las diferencias con la colindante quedaron arregladas amistosamente.

2°. Que con respecto al divorcio de Pintado, el querellado le aconsejó que traspasara su finca a un tercero en lo que pasaba la cuestión del divorcio, para que después la finca volviese de nuevo a su poder, previo el pago de los honorarios convenidos con el querellado, montantes a una tercera parte del valor de la finca.

3°. Que con el fin de obtener la firma de Carolina Hernández, necesaria para el traspaso de los bienes de Pintado, el querellado estuvo dos o tres veces en casa de la Carolina Hernández y pidióle la firma una vez diciéndole que era para el divorcio, y otra, diciéndole que era para vender la finca, y que Carolina Hernández se negó a firmar, diciendo que no quería vender su terreno, que era lo único que tenía para mantener cuatro hijos.

4°. Que el querellado, con el fin de cobrar sus honorarios, y con el propósito de llevar a cabo el traspaso de bienes que había aconsejado a Pintado, hizo que éste firmara un pagaré por la suma de $141.66 a favor de Carlos Nieves, a quien Pintado no conocía ni debía nada. El pagaré fué otorgado el día 1°. de febrero de 1913, pero se hizo con fecha 10 de enero de 1912, para vencer el 31 de enero de 1913. El documento fué escrito de puño y letra del querellado.

Que el documento se hizo con el objeto de presentar una demanda en cobro del mismo, embargar la finca, y conseguir así el traspaso que no se había podido llevar a cabo por la

negativa de Carolina Hernández a firmar cualquier documento que la privase de su propiedad.

Que con el objeto de poder conseguir un embargo de la finca sin necesidad de prestar fianza, el querellado requirió a Pintado para que reconociera la autenticidad de su firma al pie del pagaré simulado, el cual reconocimiento se hizo ante el propio querellado en su carácter de notario público, el día 6 de febrero, 1913.

Que al día siguiente, Carlos Nieves, a favor de quien se había otorgado el pagaré, lo endosó por valor recibido a Francisco Des Choudens, quien el mismo día 7 de febrero preparó una demanda en cobro del pagaré, siguiendo un formulario de demanda, que le facilitara el querellado. El mismo día el demandante Des Choudens solicitó embargo preventivo de la finca de Leocadio Pintado, el cual fué decretado por la corte.

El mandamiento expedido por la Corte al márshal fué redactado y escrito de su puño y letra por el querellado, quien a preguntas del *referee* admitió haber hecho dicho mandamiento, aunque antes había declarado que no había tomado participación alguna en el pleito en cobro del pagaré, por tratarse de un asunto contra su cliente Pintado.

5°. Que el querellado fué a buscar y acompañó al márshal de la Corte Municipal de Bayamón para practicar el embargo de las propiedades de Pintado; y que la diligencia de embargo fué suspendida a instancia del querellado, a quien el márshal obedecía, apesar de que el querellado manifestó que no era abogado del demandante Des Choudens y que no había tomado parte en dicho pleito.

Que suspendido el embargo por orden del querellado, éste aconsejó a Pintado y a su esposa que fueran al día siguiente a su bufete para levantar el embargo, lo cual ofrecieron hacer.

Que al día siguiente, Pintado y su esposa fueron al bufete del querellado con el propósito de levantar el embargo, y una vez allí el querellado les presentó un documento para que lo firmaran; que Carolina Hernández, esposa de Pintado,

firmó el documento que le presentó el querellado, sin serle leído, sin conocer su contenido y en la creencia de que lo que firmaba era necesario para librar su propiedad del embargo practicado el día anterior, que el documento así firmado era en efecto una escritura por la cual Pintado y su esposa vendían a Francisco Des Choudens la finca, por la suma de cuatrociento dollars, que se confesaban como recibidos, pero que en realidad nunca fueron recibidos por los dueños de la propiedad; y que Carolina Hernández nunca convino en vender su propiedad a Des Choudens, ni a ninguna otra persona.

El *referee* cree que Pintado firmó la escritura de venta a Des Choudens, conociendo su contenido y con el propósito de privar a su esposa de su participación en la finca, pero no con la intención de que la propiedad pasara a ser de Des Choudens como dueño absoluto de ella.

6°. Que una vez adquirida la propiedad por Des Choudens el querellado empezó inmediatamente a hacer gestiones para traspasarla a un tercero, y la ofreció en venta a Bartolomé Joy, el cual convino en aceptar la propiedad a cambió de un automóvil, que fué valorado por el querellado y por Joy en la suma de $300; y que por fin la finca fué cedida por Des Choudens a Joy a cambio del citado automóvil.

7°. Que adquirido el automóvil por Des Choudens, el querellado hizo gestiones para salir del automóvil, y por fin lo cambió a Rafael González por una pareja de caballos y una calesa, valorado todo en $150; y que los caballos fueron vendidos por Des Choudens a un tal Rossy por la suma de $120.

La consecuencia de todos los hechos probados es que Carolina Hernández y su esposo han sido despojados de su propiedad, sin el consentimiento de la primera, y en violación del convenio hecho con el segundo al efecto de que una vez divorciada, la finca volveria a ser de él, mediante el pago de una tercera parte al querellado, por sus honorarios.

El *referee* cree que el querellado es responsable del despojo realizado, pues todo el procedimiento seguido para llevarlo a efecto fué aconsejado por él y bajo su dirección.

El abogado del querellado sostuvo ante el *referee* que no se probó que Pintado solicitara los servicios del querellado para el pleito de divorcio. La declaración de Carolina Hernández dice que Figueroa Maestre le pidió su firma para el divorcio, y tenemos además la declaración dudosa de Pintado. Desde luego que estas manifestaciones son negadas por el querellado pero no puede prestarse gran atención a su negativa, dado el juicio que hemos formado de su declaración con respecto a los hechos del primer cargo formulado contra él. Pero la cuestión del divorcio carece de importancia y hemos de considerar que lo esencial del segundo cargo contra el querellado es el fraude perpetrado contra Carolina Hernández. Se puede admitir, como sostiene el querellado, que Pintado en realidad le adeudara al querellado cierta suma por servicios prestados antes y que había de prestarle después.

Sostiene también el querellado que Pintado quería vender sus bienes para pagar a Figueroa Maestre la cantidad que le debía. Hasta aquí podemos aceptar las manifestaciones del querellado, pero al mismo tiempo la prueba demuestra que Pintado creyó que él había de recibir algún beneficio para sí, en contra de su esposa, al efectuarse esa venta. También podemos creer que Figueroa Maestre envió a Pintado adonde Des Choudens, pero, desde este momento en adelante la prueba es convincente en el sentido de que Figueroa Maestre dirigió y dominó todas las negociaciones. Cuando se le preguntó por primera vez al querellado acerca del embargo trabado sobre las tierras de Pintado, negó que hubiera tenido participación alguna en él, pero después confesó que él era quien había preparado los documentos para Des Choudens.

Si Pintado en realidad debía algo al demandado, lo cual no es improbable, lo recto hubiera sido que el querellado le exigiera un pagaré, aun quizás una hipoteca, a su favor por la cantidad adeudada, y en lugar de ésto, se extiende un pagaré con fecha atrasada, en el que no figura Des Choudens

como acreedor, sino un empleado suyo llamado Nieves. Todas estas operaciones fueron innecesariamente complicadas.

Parece absurdo a los abogados del querellado el suponer que los hechos se desarrollaran en la forma en que los testigos del gobierno han tratado de demostrar, pero es un absurdo aún mayor y hasta una imposibilidad humana, el seguir y creer el desarrollo de los sucesos como los ha pintado, el querellado.

El querellado parece sostener que Des Choudens iba a comprar la finca de Pintado y había de constituirse en fiador de la deuda que el citado Pintado tenía con el querellado. Para convencerse uno de lo absurdo de estas manifestaciones no hay más que leer la declaración de Des Choudens. La declaración del testigo demostró que sólo conocía algunos hechos superficiales, pero en las repreguntas demostró un conocimiento y una memoria en contradicción con el carácter de fiador que él asumía desempeñar. Toda la prueba demuestra que Des Choudens ocupaba el puesto de Figueroa Maestre y que actuó bajo sus órdenes,

Los procedimientos que siguieron demostraron con mayor claridad aun la realidad de los hechos. La venta de la finca aparece haber sido hecha a Des Choudens, y sin embargo su administración y dominio por parte del querellado se trasluce en todos los traspasos que siguieron, a saber, en la permuta de la finca por el automóvil, en la permuta del automóvil por la calesa y los caballos, y finalmente, en la realización de los mismos en metálico. Es innecesario que revisemos toda la prueba. Hay en ella alguna contradicción, pero la veracidad parece estar de parte de los testigos del Gobierno, y no a favor del querellado. Si no se hubiere perpetrado fraude alguno, no hubiera habido necesidad de emplear métodos tan tortuosos para conseguir fines tan sencillos.

Los abogados del querellado comentaron el hecho de que sería absurdo el que una persona fuera tan tonta como Carolina Hernández, creyendo que firmando un simple papel levantaba el embargo, pero el márshal se encontraba en la finca de

la sociedad de gananciales de Pintado y su esposa practicando el embargo, y desistió de hacerlo al ruego del querellado, y puede ser que ella, una, mujer que no sabía escribir, se impresionara y ofuscara por el hecho de estar el márshal allí y por los actos de su marido y del querellado, hasta tai punto que estuviera dispuesta a hacer todo lo que se le pidiera para librar la propiedad.

No encontramos nada en el resto de la prueba que demuestre que los hechos son distintos de los que el *referee* declaró probados, y después de haber examinado detenidamente toda la prueba practicada, expresamente aceptamos sus conclusiones de hecho como si fueran nuestras, con la excepción que indicamos al discutir el primer cargo.

El querellado en su alegato ataca la conducta del Fiscal de esta corte. Sostiene él que el Fiscal era su enemigo pero no encontramos nada en los autos que justifique esa suposición. El querellado hizo que el Fiscal declarara y en esa forma aceptó su credibilidad. La queja en particular se dirije a la forma en que se tomaron las declaraciones preliminares de los testigos por dicho Fiscal. El querellado sostiene que el Fiscal demostró parcialidad en la elección de los testigos y en poner por escrito las manifestaciones de los testigos o en dejar de hacerlo. Generalmente la elección de sus testigos está bajo el control del Fiscal y no encontramos prueba alguna de parcialidad ni de conducta indebida por parte de dicho funcionario en este caso, pero aun en el supuesto de que hubiera existido, era necesario que se estableciera por medio de un procedimiento especial de carácter administrativo o de otra naturaleza dirigido contra el Fiscal. La prueba de esa indebida conducta para nada influiría en la determinación de la veracidad de las cuestiones de hecho planteadas entre El Pueblo de Puerto Rico y el querellado para oir las cuales se nombró al *referee*.

Alega el querellado que no es al *referee* a quien toca resolver este caso, sino a la corte, y en eso estamos de acuerdo con él. La orden nombrando al *referee* se hizo sin oposición

alguna por parte del querellado, y en dicha orden se comisionó al *referee* para recibir la prueba que le presentaran ambas partes y para remitirla a esta corte con sus conclusiones sobre el resultado de la misma. No estamos obligados a seguir las conclusiones del *referee* y si lo hemos hecho, es porque la prueba las justifica ampliamente.

Estos son cargos gravísimos que afectan la naturaleza esencial de las relaciones entre un abogado y su cliente, y al público, que por razón de la naturaleza complicada de la sociedad y el origen complicado de algunos de nuestros más preciados derechos, están a merced de un cuerpo de peritos experimentados a los cuales se les conoce en el mundo con el nombre de abogados. Debe ser objeto de satisfacción para la sociedad en general y especialmente para el foro el que se pueda casi universalmente depositar la confianza en un abogado para que proteja a las personas indefensas con las cuales está ligado por relaciones profesionales. Tal vez pudiéramos imaginarnos aunque no excusar a un abogado que necesitado de dinero retuviera indefinidamente el de su cliente, pero nunca a uno a quien después de pedírsele la devolución del dinero, no solamente se niega a pagarlo, sino que trata de zaherir a su cliente acusándolo de perjuro e imputando a otros testigos una conducta tal que los haría perjuros y conspiradores. Podríamos también imaginarnos un letrado que llevado por el celo hacia su cliente pudiera engañar a otra persona o al tribunal. Su conducta sería mala, pero aún así estaría actuando por una idea equivocada de los intereses de su cliente; pero en este caso tenemos a un letrado que no solamente engaña y defrauda a una mujer indefensa para enriquecerse sino que se vuelve contra su mismo cliente por despreciable que sea y lo despoja de su propiedad. La sociedad debe estar protegida contra letrados como el querellado, y aunque sintamos pena como la sentimos hacia la persona en particular, creemos que no podemos ejercitar discreción alguna teniendo en cuenta los hechos, y habiendo sido probados ambos cargos, el querellado debe ser

privado del ejercicio de su profesión.   El abogado Figueroa
Maestre ejerce también funciones notariales, y para acor-
dar lo que proceda·acerca de si por el mero hecho de ser sepa-
rado del ejercicio de su profesión de abogado debe cesar igual-
mente en el ejercicio de las funciones notariales, procede se
le haga saber que comparezca ante esta Corte Suprema a
mostrar razones si es que las tiene, en virtud de las cuales
pueda continuar ejerciendo el cargo de notario, no obstante
cesar en el ejercicio de su profesión de abogado.

> *Decretada la separación del querellado del
> ejercicio de su profesión de abogado y expe-
> dida orden para que muestre las razones por
> las cuales no deba ser separado del ejercicio
> de su profesión notarial como consecuencia
> de lo anterior.* ·

Jueces concurrentes: Sres. Presidente Hernández y Aso-
ciados del Toro y Aldrey.