*In re* ANTONIO GUZMÁN JUARBE, querellado.

Número 97.
*Sometido*: 2 de febrero de 1961. *Resuelto*: 7 de marzo de 1961.

*R. Efrén Bernier*, abogado del querellado; *J. B. Fernández Badillo, Procurador General* y *William Fred Santiago, Procurador Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El Procurador General de Puerto Rico inició una querella contra el abogado Antonio Guzmán Juarbe imputándole conducta impropia e inmoral consistente en *a*) haber realizado una transacción por una suma menor al importe de una sentencia que había sido dictada a favor de su cliente Norberto Velázquez Hernández, sin el consentimiento de éste; *b*) haberse apropiado para su propio beneficio la suma de dinero que recibió en dicha transacción; y, *c*) haber afirmado "bajo juramento" al Tribunal Superior, Sala de Aguadilla, en un escrito sobre satisfacción de sentencia, que había recibido el importe total de la sentencia dictada cuando en realidad, como se ha expuesto, le había sido satisfecha una suma menor.(1)   El querellado aceptó la existencia de la sentencia a que se refiere el cargo, y negó el resto de los hechos.

---

(1) El cargo imputado lee como sigue:

"Que el querellado Antonio Guzmán Juarbe, voluntaria y maliciosamente violó el juramento que como abogado prestó el día 9 de abril de 1951, y específicamente los Cánones de Etica números 10, 11, 22 y 25 (48 D.P.R. VIII), cuando, habiendo obtenido sentencia a favor de su cliente, Sr. Norberto Velázquez Hernández, por la suma de $716.00, realizó una transacción con la parte perdidosa por la suma de $550.00, apropiándose la misma; todo ello, sin conocimiento ni notificación de tales actos a su cliente.   Además de lo anteriormente expuesto, el querellado asumió una conducta inmoral e impropia de un abogado, en detrimento del prestigio,

El informe del Comisionado Especial designado para recibir la prueba, Hon. Angel Fiol Negrón, declara establecidos los siguientes hechos:

"2.—El querellado intervino como abogado del demandante y representó a éste en tal carácter en el pleito civil número CS-54-643 seguido ante el Tribunal Superior, Sala de Aguadilla, por Norberto Velázquez Hernández contra José del Carmen Vargas Soto, sobre daños y perjuicios, el que culminó en sentencia final dictada el día 31 de julio de 1958 por la que se condenó a dicho demandado a pagar a dicho demandante la suma de $590.00, más las costas, más la suma de $100.00 para honorarios de abogado. El demandado, no conforme con la sentencia dictada, solicitó su reconsideración y al serle denegada ésta apeló ante el Tribunal Supremo el día 4 de septiembre de 1958.

"3.—Establecida la apelación y sin haberse perfeccionado ésta aún, el aquí querellado convino con el demandado José del Carmen Vargas Soto la transacción del pleito por la suma de $550.00 en pago y satisfacción de la sentencia dictada. Para dicho convenio el querellado no consultó a su cliente y representado el demandante en el pleito ni éste fue enterado del mismo en forma alguna. Conforme a dicho convenio el demandado Vargas Soto concurrió al edificio del Tribunal Superior, Sala de Aguadilla, el día 15 de septiembre de 1958 y reunidos allí dicho demandado, el abogado de éste José Veray, Jr. y el querellado el primero le entregó a éste, según lo convenido, la suma de $550.00 en efectivo. En dicha entrevista tampoco estaba presente el demandante y cliente del querellado Norberto Velázquez Hernández. No obstante el verdadero montante recibido por el querellado, el abogado del demandado, José Veray, Jr., radicó en la propia fecha moción escrita al Tribunal solicitando el archivo y sobreseimiento del caso por haber el demandado, según la moción, satisfecho al demandante las sumas

la dignidad y el respeto a los Tribunales de Justicia cuando afirmó bajo juramento en Moción radicada ante el Tribunal Superior de Puerto Rico, Sala de Aguadilla, haber recibido la cantidad de dinero ordenada en la sentencia, cuando le constaba la falsedad de tal afirmación. (Caso Civil Núm. CS-54-643).

"La actuación del querellado no estuvo predicada en un deseo de defender los mejores intereses de la justicia en general y de su cliente en particular, sino que actuó movido por el beneficio económico personal que tal actuación le podía producir."

de $590.00 de principal, $100.00 de honorarios y $26.00 de costas. El querellado, como abogado del demandante, hizo constar al calce de dicha moción su conformidad al archivo del caso 'por haber sido satisfechas al demandante, las sumas arriba indicadas.' Con vista de dicha moción del demandado y la conformidad del demandante, por sus respectivos abogados, el tribunal decretó el archivo del caso.

"4.—El querellado no consignó en el Tribunal la suma de $550.00 así recibida ni la entregó a su cliente. Posteriormente le dio $100.00 a éste, diciéndole que era de su propio dinero, reteniendo la diferencia. Nunca enteró a su cliente de haber transigido el caso y dicha suma de $100.00 figuró como un préstamo del querellado a cuenta de la cantidad que luego se cobrase de la sentencia.

"5.—La prueba no sostiene la contención del querellado de que él recibió del demandado en el pleito CS-54-643 el importe total de la sentencia y que cuando fue a entregar dicho importe a su cliente en Isabela días después el cliente tomó solamente $100.00, dejándole el resto para que luego se lo pagase (La declaración del querellado es al efecto de que José del Carmen Vargas le entregó $716.00 que representaba $590.00 de la indemnización concedida en el pleito CS-54-643, $100.00 de honorarios de abogado y $26.00 de costas; que del principal de la sentencia al querellado le correspondía la tercera parte o sea $196.66 que unidos a los $100.00 de honorarios hacían $296.66 como su participación, quedando $419.34 para su cliente; que cuando a su requerimiento su cliente fue a su oficina en Isabela y le fue a entregar esta última cantidad Velázquez le dijo que estaba enterado de su suspensión por el Tribunal Supremo y que estaba en una situación difícil; que le diera $100.00 adelantados y que el resto se lo pagase cuando pudiese. No hubo constancia escrita de dicha supuesta transacción aunque, según el querellado, él luego le envió a Velázquez un pagaré por la suma de $319.34 a vencer el día 22 de octubre de 1959. Velázquez negó vehementemente haber entrado en dicha transacción y haber recibido dicho pagaré si bien admitió haber recibido del querellado la suma de $100 que éste le adelantó diciéndole que era de su propio dinero.) No es lógico ni creíble que el demandado en dicho pleito le entregase al abogado de su contrario, que lo había vencido en el pleito, el importe total de la sentencia, más las

costas y honorarios de abogado. Lógico era a nuestro juicio que si el demandado estaba dispuesto a satisfacer el importe total de la sentencia, con sus costas y honorarios, lo hubiese consignado en el Tribunal o lo hubiese entregado a su abogado para dicho fin. Tampoco era un acomodo que le hacía el querellado al demandado para evitarse éste las molestias de un viaje a Aguadilla. Según el querellado, el demandado le entregó el dinero en su oficina de Isabela. Para hacerlo, el demandado tenía que pasar necesariamente por Aguadilla donde está el Tribunal y la oficina de su propio abogado. No se explicaría la necesidad de la entrega en Isabela. Esta circunstancia unida a otros detalles diseminados por la prueba nos mueve a darle crédito a los testimonios de José del Carmen Vargas, de Norberto Velázquez y del abogado José Veray, Jr., sobre lo verdaderamente ocurrido en relación con la liquidación del caso CS-54-643.

"Por otro lado, en el supuesto de que el querellado hubiese recibido el importe total de la sentencia, el hecho cierto es que él solamente entregó a su cliente $100.00 reteniendo la diferencia. Sobre esto último no hay controversia. Y los testimonios que nos han merecido crédito demuestran que el cliente del querellado no consintió en dicha retención sino que, por el contrario, requirió desde un principio y constantemente del querellado que le hiciese entrega de lo recibido por el último en pago de la sentencia dictada. La prueba es al efecto de que Velázquez es un hombre relativamente pobre y no estaba en condiciones de prestarle al querellado una suma considerable e importante para él. (Debe consignarse, por el valor que ello tenga, que al terminarse la vista de la querella el querellado entregó al Secretario del Tribunal Supremo la suma de $319.34 que es lo que, según el querellado, le adeuda a su cliente, más cierta suma representando intereses.)

"6.—En el supuesto, que no estimamos probado, de que el querellado hubiese enviado a su cliente el alegado pagaré por $319.34, tal circunstancia no desvirtuaría el hecho, demostrado por la prueba, de que el querellado efectuó la transacción con el demandado en el pleito CS-54-643 sin conocimiento ni consentimiento de su cliente y que además retuvo, también sin consentimiento de su cliente, gran parte de la suma recibida en la transacción. Es de notar también que, según el propio quere--

llado, él retuvo la suma de $100.00 fijados como honorarios en la sentencia. Dicha suma no le correspondía a él y sí a su cliente."

Como podrá observarse el Comisionado especial no dio crédito a la versión que sobre los hechos ofreció el querellado. Hemos leído cuidadosamente la transcripción de los testimonios de los testigos y examinado la prueba documental ofrecida. Las determinaciones de hecho que hemos transcrito están sostenidas por la prueba, y en verdad, no vemos cómo hubiese podido llegarse a distintas conclusiones.

El Canon 11 de los de Etica Profesional (48 D.P.R. XII) dispone que el abogado debe dar cuenta pronto de dinero del cliente que venga a sus manos, y que debe evitar que los fondos del cliente se confundan con sus bienes propios, sin el consentimiento y conocimiento de aquél. Esta norma de conducta responde a la necesidad de que las relaciones entre abogado y cliente estén fundadas en la honradez absoluta. Nada contribuye tanto a afectar adversamente la reputación de la profesión legal en la comunidad como situaciones similares a la que consideramos, *Sturr* v. *State Bar of California*, 338 P.2d 897 (Cal., 1959). Y la fe y la confianza del pueblo es esencial para que el abogado pueda cumplir cabalmente la función que le corresponde en nuestra sociedad. Es por eso que no podemos dejar de sancionar rigurosamente los actos realizados por el querellado en este caso. El Juez Presidente Vanderbilt de Nueva Jersey ha expresado que "Los fondos de un cliente en poder de su abogado deben permanecer intocados. Por razones obvias, en estos casos se aplican las normas más estrictas de conducta y toda presunción es desfavorable a quien utiliza los fondos en forma no autorizada." *In re Gavel*, 125 A.2d 696, 704 (N. J., 1956).(²) En el pa-

---

(²) Véase, *Handling of Clients' Money or Other Trust Property—Commingling or Use by Attorney Cause for Suspension* (1960), 62 W. Va. L. R. 260; Anotación, *Disbarment for failure to account for money of client*, 43 A.L.R. 54.

sado, en situaciones similares, hemos ordenado la separación del ejercicio de la profesión del abogado querellado. *In re Navarro*, 78 D.P.R. 364 (1955); *In re Soto Rivera*, 43 D.P.R. 1 (1932); *In re Flores Colón*, 37 D.P.R. 784 (1928); *In re Figueroa Maestre*, 20 D.P.R. 425 (1914). Cf. *In re Ruiz de Val*, 43 D.P.R. 265 (1932).

Lo anteriormente expuesto es suficiente para disponer de la querella, pero no deseamos dejar pasar la oportunidad para llamar la atención hacia el hecho de que en este caso se presentó al tribunal de instancia una moción sobre satisfacción total de sentencia que no reflejaba adecuadamente todos los hechos. Los abogados de las partes debieron hacer constar la verdadera transacción realizada por ellos, aun cuando el pago de la suma de quinientos cincuenta dólares hecha por el demandado al demandante, más la renuncia de una parte de la participación en la sentencia que recibiría el querellado en concepto de honorarios, fuera equivalente al importe total de dicha sentencia. Canon 22 de los de Etica Profesional (48 D.P.R. XVI). Cf. *In re Cruz Disdier*, 70 D.P.R. 453 (1949); *In re Díaz*, 16 D.P.R. 82 (1910).

Para la fecha en que ocurrieron los hechos a que se refiere el cargo el querellado tenía pendiente otra querella de desaforo que se resolvió pocos días después, *In re Guzmán*, 80 D.P.R. 713 (1958), a pesar de lo cual incurrió en las faltas imputadas cuya gravedad y seriedad sólo pueden sancionarse mediante su separación del ejercicio de la profesión.

*Se decretará el desaforo del querellado y se ordena que se elimine su nombre del registro de abogados.*(³)

El Juez Presidente Sr. Negrón Fernández no intervino.

(³) Para la disposición final de esta querella se ordena al Secretario de este Tribunal que entregue la suma de $350.46 que se encuentra depositada bajo su custodia al señor Norberto Velázquez, para restituirle de la participación de éste en la sentencia dictada por el Tribunal Superior de Aguadilla.