EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Jorge Farinacci García | 2005 TSPR 6<br><br>163 DPR _____ |

Número del Caso: TS-4299

Fecha: 28 de enero de 2005

Abogado de la Parte Peticionaria:
                    Lcdo. Leonardo Delgado Navarro

Oficina del Procurador General:
                    Lcda. Yvonne Casanova Pelosi
                    Procuradora General Auxiliar

Miembros de la Comisión de Reputación para el Ejercicio de la Abogacía:

                    Lcdo. Doel Quiñones Núñez
                    Lcda. Belén Guerrero Calderón
                    Lcdo. Carlos Víctor Dávila
                    Dr. Robert Stohlberg
                    Lcdo. José Guillermo Vivas
                    Lcda. Waleska Delgado Marrero
                    Lcdo. Héctor Saldaña Egozcue

                    Lcdo. Alcides Oquendo Solís
                    Procurador Especial de la Comisión

Materia: Solicitud de Reinstalación

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Jorge Farinacci García

TS-4299

RESOLUCIÓN

San Juan, Puerto Rico, a 28 de enero de 2005.

Jorge Farinacci García fue admitido a la práctica profesional el 3 de enero de 1974.

El 30 de abril de 1993 ordenamos su suspensión del ejercicio de la abogacía, por razón de su convicción en el Tribunal de Distrito de los Estados Unidos para el Distrito de Connecticut por la comisión de los delitos graves de transportación al extranjero de dinero robado y de conspiración.

El 9 de octubre de 2000, luego de cumplido totalmente su sentencia penal por los delitos referidos antes, Farinacci García solicitó su reinstalación al ejercicio profesional, la cual denegamos.

El 2 de marzo de 2001 Farinacci García solicitó nuevamente su reinstalación. En esa ocasión referimos la solicitud a la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía (en adelante la Comisión). Luego de los procedimientos de rigor, el 12 de agosto de 2003 la Comisión recomendó favorablemente la solicitud de reinstalación en cuestión. Dicha reinstalación, además, fue apoyada por el Procurador General de Puerto Rico.

El 14 de noviembre de 2003 solicitamos a la Secretaria del Tribunal que nos gestionara la transcripción de la vista celebrada por la Comisión con relación a este asunto, la cual nos fue enviada el 20 de enero de 2004.

Examinada cuidadosamente la transcripción referida y los otros documentos pertinentes que obran en autos, consideramos que no existen fundamentos suficientes para descartar las recomendaciones del Procurador General de Puerto Rico y de la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía de que el peticionario Farinacci García sea reinstalado al ejercicio profesional.

Por los fundamentos antes expuestos, se autoriza la reinstalación de Jorge Farinacci García al ejercicio profesional de la abogacía.

Publíquese.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López emitió un voto particular disidente. El Juez Asociado señor Rivera Pérez emitió una opinión disidente, a la que se une el Juez Asociado señor Corrada del Río.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Jorge Farinacci García                TS-4299


VOTO PARTICULAR DISIDENTE EMITIDO POR EL
JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ


San Juan, Puerto Rico a 28 de enero de 2005

Aun cuando simpatizamos con la solicitud de reinstalación al ejercicio de la abogacía del peticionario Jorge Farinacci García, en conciencia nos vemos impedidos de endosar con nuestro voto su reinstalación.

Estamos conscientes de que Farinacci García goza de una buena reputación en la sociedad en que convive. En segundo término, somos del criterio que se podría hasta concluir que éste cumple con el requisito de estar rehabilitado; ello desde el punto de vista de que Farinacci García honestamente entiende que, dadas las circunstancias existentes hoy en día en nuestro País, no hay necesidad alguna

de que ni él ni otros se involucren en actividades delictivas análogas a aquellas en que él se involucró y por las cuales hizo alegación de culpabilidad.[1]

Ello no obstante, estamos convencidos que de la prueba que desfiló ante la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía surge con meridiana claridad que Farinacci García continuó realizando funciones propias de la profesión de la abogacía durante el período de tiempo en que ha estado desaforado. Ello así surge, diáfanamente, tanto de su propio testimonio como de las declaraciones del Sr. Jorge L. Cruz Negrón, presidente de la Seafarer International Union y de la Lcda. Vivian Godileaux, e, incluso, de una estipulación, realizada por las partes, que fue propuesta por el propio abogado de Farinacci García, el Lcdo. Leonardo Delgado. Veamos.

> **A preguntas del Lcdo. Leonardo Delgado, representante legal de Farinacci García, y del Lcdo. Alcides Oquendo Solis, Procurador Especial de la Comisión, el Presidente de la Seafarer International Union declaró, en lo aquí pertinente, lo siguiente:**

. . . .

LCDO. LEONARDO DELGADO:

Y actualmente, ¿Qué relación si alguna usted guarda con Jorge Farinacci García?

SR. CRUZ NEGRÓN:

Ahora es asesor en los casos de arbitraje y en los casos de negociación colectiva.

LCDO. LEONARDO DELGADO:

---

[1] No hay duda que el arrepentimiento forma parte integrante de la rehabilitación, In re: Pedro Coltón Fontán, 2001 TSPR 91; proceso que, de ordinario, comienza al aceptarse responsabilidad por los hechos que se le imputan. In re: Pacheco Nieves, 135 D.P.R. 95 (1994).

Le pregunto, podría detallar las funciones que realiza Jorge Farinacci García para la **"*ininteligible* International Union"**.

SR. CRUZ NEGRÓN:

Sí, eh, cuando tenemos cualquier disputa entre el patrono y los empleados, pues, cuando los casos van para arbitraje pues el compañero Farinacci es el que nos asesora en la forma de llevar los casos en lo que tiene que ver con relacionado a la ley y o en las negociaciones colectivas, pues las distintas peticiones, las solicitudes que se hacen a los patronos. (énfasis suplido).

. . . .

LCDO. ALCIDES OQUENDO SOLIS:

Nos indica que ahora que es presidente de la unión comparte mucho más de lo que hacía antes, ¿Es correcto?

SR. CRUZ NEGRÓN:

Eso es correcto.

LCDO. ALCIDES OQUENDO SOLIS:

¿Ese compartir en qué consiste?

SR. CRUZ NEGRÓN:

Bueno eso [sic] compartir consiste en que pues en aquel momento yo era delegado de Industria Lechera, yo trabajaba mis ocho (8) horas dentro de la Industria Lechera y compartía con el señor Farinacci en los casos cuando íbamos a ver vistas en arbitraje. Ahora el ser presidente de la unión pues comparto más porque me asesoro con él [sic] relacionado a las negociaciones de los convenios a los casos globales de la Unión de Arbitraje, no exclusivamente de Industria Lechera como antes, o sea que estamos más en comunicación. (énfasis suplido).

. . . .

Por su parte, la Lcda. Vivian Godileaux, abogada del Instituto de Derecho Laboral, a preguntas del Lcdo. Leonardo Delgado, testificó lo siguiente:

. . . .

LCDO. LEONARDO DELGADO:

¿Licenciada a qué usted se dedica?

LCDA. VIVIAN GODILEAUX:

Soy abogada y trabajo actualmente en el Instituto de Derecho Laboral con el Sr. Jorge Farinacci y el Lcdo. César Rosado.

. . . .

LCDO. LEONARDO DELGADO:

OK, y durante ese año y medio que usted ha tenido contacto con el Sr. Jorge Farinacci García en qué ha consistido ese contacto.

LCDA. VIVIAN GODILEAUX:

Trabajo como ya dije en el Instituto de Derecho Laboral una vez yo me mudo de Ponce, trabajaba en un bufete en Ponce eh, el Sr. Jorge Farinacci me abrió las puertas del Instituto de Derecho Laboral para que pudiera trabajar allí y poder ejercer mis funciones como abogada lo cual le agradezco muchísimo y en ese sentido pues <u>he trabajado allí junto con él, me ha orientado en muchos aspectos jurídicos cuando he necesitado orientación específicamente en derecho laboral, trabajamos en conjunto algunos casos para la Unión de Tronquistas entre otras cosas.</u> (énfasis suplido).

. . . .

LCDO. LEONARDO DELGADO:

Le pregunto cuál es la participación de Jorge Farinacci dentro del Instituto de Derecho Laboral.

LCDA. VIVIAN GODILEAUX:

Es quien <u>realmente preside y es el líder</u> del Instituto de Derecho Laboral. (énfasis suplido).
. . . .

**Asimismo, y a preguntas de la Procuradora Auxiliar del Departamento de Justicia, Lcda. Yvonne Casanova Pelosi, la Lcda. Godileaux testificó como sigue:**
. . . .

LCDA. YVONNE CASANOVA PELOSI:

¿Y cómo es que se hace el asesoramiento, cómo se asignan los abogados, cómo es que funciona si

alguien necesita los servicios del Instituto cómo es que se contratan esos servicios?

LCDA. VIVIAN GODILEAUX:

Se contratan, este..., lo que pasa es [sic] el Instituto de Derecho Laboral le da asesoramiento y tiene uniones a quienes representa, también ha creado ya una fama en la cual <u>muchas personas van allí a buscar asesoramiento legal cuando tienen algún problema de despido o algún problema laboral</u> aunque no sean unionados y los dividimos dependiendo de la carga de trabajo de cada abogado o sea, es como, funciona como si fuera un bufete lo que pasa es que no es un bufete de abogados. Pero es básicamente igual. (énfasis suplido).

LCDA. YVONNE CASANOVA PELOSI:

Usted dice que él preside, ¿Cuál es la función de él como presidente del Instituto de Derecho Laboral?

. . . .

LCDA. VIVIAN GODILEAUX:

Y [sic] él está allí básicamente, pues para la administración del Instituto porque obviamente pues no va al tribunal pero para la administración del instituto <u>y se reúnen se discuten casos, cuando hay que buscar asesoramiento que él nos diga ese tipo de cosas</u>, pero es básicamente cuando presidente [sic] es porque lo administra. (énfasis suplido).

. . . .

Por último, el representante legal de Farinacci García, Lcdo. Leonardo Delgado, refiriéndose a una oferta de estipulación, señaló lo siguiente:

. . . .

LCDO. LEONARDO DELGADO:

Eh, Procuradora, perdón, y estamos aquí discutiendo una posible oferta de estipulación con relación a todos los testigos que son presidentes de unión y que <u>el Sr. Jorge Farinacci le ha servido de asesor legal en mediación, en negociación y en arbitraje</u> y le estoy ofreciendo aquí un pequeño proyecto de estipulación porque entiendo y ellos también me han hecho ese

>señalamiento que el testimonio de estos testigos
>adicionales que son presidentes de unión sería
>prueba repetitiva con relación a lo que ya
>testificó Jorge Cruz, Presidente .... (énfasis
>suplido).
>
>. . . .

### I

No cabe duda que un abogado desaforado por este Tribunal que asesora o aconseja a una persona o institución sobre la aplicabilidad o no de una ley a una situación de hechos en particular o sobre el curso de acción o estrategia a seguir en determinados procedimientos en que se ventilan derechos de las partes, está realizando una de las funciones principales, y más importantes, de la profesión legal. Dicha situación se agrava ciertamente cuando esta persona establece una institución de servicios legales y, a su amparo, dirige y aconseja a otros abogados con relación al ejercicio de su práctica legal.

No podemos permitir esa clase de conducta; esto es, no podemos "hacernos de la vista larga", y hasta premiar con la reinstalación, a un miembro de la profesión que es desaforado y que, abiertamente, continúa practicando la profesión al actuar como asesor legal o laboral de instituciones y de personas a cambio de remuneración económica. Ello, además de constituir una burla al poder disciplinario de este Tribunal, podría constituir una violación a la Sección 7 de la Ley Núm. 17 del 10 de junio de 1939, 4 L.P.R.A. sec. 740, sobre el ejercicio ilegal de la profesión de abogado en nuestra jurisdicción. Realmente

<u>no</u> alcanzamos a comprender cómo el Tribunal puede avalar esta situación.

De hoy en adelante, el desaforo de un abogado por este Tribunal realmente no tiene importancia alguna ya que éste podrá continuar practicando la profesión como si nada hubiera pasado. ¿<u>Hasta dónde ha llegado este Tribunal y hacia dónde se dirige el mismo</u>?

Por último, rechazamos <u>por errónea</u> la posición asumida tanto por la Comisión como por el Procurador General de Puerto Rico --<u>y, hasta cierto punto, avalada por este Tribunal</u>-- a los efectos de que una persona, bajo circunstancias como la del caso en cuestión, le informe a sus clientes que ha sido desaforado, lo exonera de responsabilidad por la conducta incurrida.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

                                        TS-4299
**Jorge Farinacci García**

Opinión Disidente emitida por el Juez Asociado señor Rivera Pérez a la que se unió el Juez Asociado señor Corrada del Río.

San Juan, Puerto Rico, a 28 de enero de 2005.

En esta ocasión la Mayoría ordena la reinstalación a la abogacía del señor Jorge Farinacci García. Sostiene que no existen fundamentos suficientes para descartar las recomendaciones del Procurador General y de la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía, después de examinar la transcripción de la evidencia y los documentos pertinentes que obran en autos. Por entender que la recomendación de tales organismos, que acoge la Mayoría, es contraria e inconsistente con la normativa pautada por este Tribunal, sobre estos asuntos en casos anteriores, DISIENTO.

I

El señor Jorge Aurelio Farinacci fue admitido al ejercicio de la profesión de abogado el 3 de enero de 1974 y presentó juramento como notario público el 29 de abril de 1974.[2]

El Tribunal de Distrito de los Estados Unidos para el Distrito de Connecticut nos notificó a través de nuestra Secretaria General de una sentencia condenatoria recaída en su contra el 14 de julio de 1992 en un procedimiento criminal en esa jurisdicción, caso núm. H-85-50-06, por la comisión de delitos graves (transportación al extranjero de dinero robado y conspiración). El señor Jorge Aurelio Farinacci García registró alegación de culpabilidad por la comisión de esos delitos. El 30 de abril de 1993 decretamos la suspensión inmediata del señor Farinacci García del ejercicio de la abogacía y ordenamos que su nombre fuera borrado del Registro de Abogados autorizados a ejercer la profesión en esta jurisdicción, a tenor con la Ley Núm. 9 de 11 de mayo de 1909.[3]

El 23 de marzo de 1995 el señor Farinacci García solicitó su reinstalación a la profesión de abogado. El 7 de abril de 1995 emitimos Resolución declarando no ha lugar a esa solicitud porque éste no había extinguido en su totalidad los términos de la sentencia condenatoria que originó su suspensión.

---

[2] Renunció voluntariamente a la notaría, según surge de nuestra Resolución del 18 de noviembre de 1992.

[3] 4 L.P.R.A. sec. 735.

El 9 de octubre de 2000 el señor Farinacci García solicitó nuevamente su reinstalación a la profesión de abogado, alegando que era procedente a tenor con lo expresado por este Tribunal en In re: Pacheco Nieves[4] y en In re: José D. Malavet Rodríguez,[5] y a que ya había extinguido totalmente su sentencia condenatoria. Arguyó que está rehabilitado ante la sociedad, y durante mas de siete(7) años, desde su suspensión, se ha mantenido activo en diferentes facetas del campo legal. Expresó que desde enero de 1995 ha sido el Director del Departamento de Arbitraje y Negociación de la Unión de Tronquistas de Puerto Rico, Local 901; es asesor laboral de la Seafares International Union y de la Unión de Trabajadores de la Autoridad Metropolitana de Autobuses. Como parte de esas posiciones de trabajo atendió vistas ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos, funge como mediador y asiste en los procesos de negociación de convenios colectivos. El solicitante fue profesor de derecho laboral, de arbitraje obrero patronal y de negociación colectiva en la Escuela de Derecho, Eugenio María de Hostos. Ha sido conferenciante en diversas universidades y organiza seminarios de relaciones obrero patronales para diversos sindicatos en Puerto Rico. Adujo, que durante todos esos años se ha mantenido activo en el proceso de educación legal continuada. Ha asistido a seminarios especializados en asuntos relacionados al derecho al trabajo en Nevada, Florida y en universidades en Puerto

---

[4] 135 D.P.R. 95 (1994).

[5] 135 D.P.R. 823 (1994).

Rico, entre otros. Afirmó que goza de buena reputación entre la comunidad legal, los trabajadores y los estudiantes. Fue invitado por el señor Ramsey Clark, ex-Secretario de Justicia de los Estados Unidos a participar como Juez en un Tribunal Internacional convocado en la ciudad de Nueva York. Solicitó que se incluyera la primera petición de reinstalación radicada en enero de 1995 con todos sus anejos como parte de la segunda. Puntualizó como importante el hecho que los cargos criminales que se le imputaron se dieron dentro del marco de la lucha anticolonial del pueblo de Puerto Rico. Arguyó que la actividad que se le imputó está protegida por diversas Resoluciones de la Asamblea General de las Naciones Unidas. Puntualizó, además, que se desprende del "Plea Agreement" que produjo su alegación de culpabilidad y convicción por los delitos antes descritos que el Gobierno de Estados Unidos reconoció que los hechos y acciones en los que participó se hicieron en el contexto de la lucha anticolonial del pueblo de Puerto Rico. Afirmó que nunca hubo ánimo de lucro o ganancia personal para él en los actos delictivos imputados. Sostuvo que por tales motivos no existe ni ha existido un caso de depravación moral de su parte. Afirmó, que los actos llevados a cabo por él, y por los que resultó convicto, "fueron unos realizados en aquel momento histórico conforme a los más (sic) principios de justicia, libertad, y democracia que delimitan nuestro ordenamiento jurídico". El 3 de noviembre de 2000 emitimos Resolución declarando no ha lugar la nueva (segunda) solicitud de reinstalación a la abogacía del señor Jorge Aurelio Farinacci García. No obstante, los Jueces Asociados señor Rebollo López y señor

Fuster Berlingeri y la entonces Jueza Asociada señora Naveira Merly hubieran remitido el asunto a la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía (de ahora en adelante Comisión).

El 21 de noviembre de 2000 el señor Farinacci García presentó "Solicitud de Reconsideración" a nuestra Resolución del 3 de noviembre de 2000. Sostuvo que cumple cabal y totalmente con todos y cada uno de los requisitos para su reinstalación a la abogacía. Alegó que este tribunal cometió un abuso de discreción y realizó una aplicación selectiva de la norma jurisprudencial vigente. Le imputó a este Tribunal discriminación en su contra por no permitirle ser evaluado por la Comisión. Arguyó refiriéndose a la resolución dictada por este Tribunal, en el asunto ante nos, lo siguiente: "...dejan la sospecha de que cuando el Honorable [sic] Tribunal Supremo emitió la misma se subscribió y unió silenciosamente al discrimen contra el independentismo en Puerto Rico". Expresó, "...con mucho dolor tenemos que decir que la Resolución contra la cual solicitamos la reconsideración es un retroceso en la evolución del pensamiento jurídico del Honorable Tribunal Supremo de Puerto Rico con relación a la defensa incondicional del derecho a la expresión, del derecho a disentir y su consecuente esfuerzo por proteger el derecho al espacio político a aquellos que se revelan contra la condición de colonia de nuestro pueblo". Sostuvo que si no reconsiderábamos nuestra Resolución del 3 de noviembre de 2000 declarando sin lugar su solicitud de reinstalación estaríamos criminalizando y censurando la expresión del sector de la población que está de acuerdo con

los postulados que él defiende.  Solicitó que remitiéramos su solicitud de reinstalación a la Comisión.  El 20 de febrero de 2001 emitimos Resolución declarando no ha lugar la solicitud de reconsideración.  No obstante, la entonces Jueza Asociada señora Naveira Merly y el Juez Asociado señor Fuster Berlingeri reiteraron su criterio de remitir la solicitud de reinstalación a la Comisión.

El 2 de marzo de 2000 el señor Farinacci García solicitó nuevamente reconsideración y se reiteró en su petición de referir su solicitud de readmisión a la Comisión.  El 30 de marzo de 2001 reconsideramos y accedimos a referir la misma a dicho cuerpo, adscrito a este Tribunal a los fines de evaluar la solicitud de reinstalación a la abogacía.

La vista evidenciaria fue celebrada por la Comisión el 28 de enero de 2002.  El 7 de marzo de 2002 compareció el Procurador General ante nos y recomendó la reinstalación a la abogacía del peticionario. La Comisión presentó su informe de fecha 12 de agosto de 2003 ante este Tribunal.  Concluyó que el señor Jorge Aurelio Farinacci García presentó el grado de prueba necesario que justifica su reinstalación al ejercicio de la abogacía.  El testimonio del peticionario, así como el de los demás testigos desfilados por esa parte persuadieron a los miembros de la Comisión que el arrepentimiento y la rehabilitación efectivamente fue alcanzada por el primero.[6]

El 14 de noviembre de 2003 emitimos Resolución a la Secretaria para que gestionara ante la Comisión la transcripción de la vista celebrada en este caso.  La

referida transcripción fue enviada a los miembros de este Tribunal y a las partes el 20 de enero de 2004.

II

En In re: Pacheco Nieves, *supra,* pautamos la norma, como regla general, que la exitosa rehabilitación de una persona que ha delinquido depende principalmente de la aceptación del error cometido y su responsabilidad por el mismo. No obstante, lo anterior no puede convertirse en una norma inflexible que deba aplicarse automáticamente en todos los casos. Una persona que genuinamente se cree inocente de unos hechos delictivos que le fueron imputados y por los que resultó convicto, por haber recaído un veredicto o fallo de culpabilidad, después de defenderse de los mismos, no debe ser obligada a "aceptar" su culpabilidad como condición *sine qua non* para su readmisión a la profesión a la abogacía. La inocencia o culpabilidad del señor William Pacheco Nieves fue adjudicada por un Jurado; el juzgador de los hechos determinó que era culpable. Concluimos que dicha cuestión no debía ser relitigada nuevamente al considerar la petición de reinstalación del señor Pacheco Nieves.[7]

---

[6] Lo acordó la Comisión por unanimidad de los miembros que participaron. Los comisionados Waleska Delgado Serrano y Héctor Saldaña Egozcue no intervinieron.

[7] La Comisión de Reputación de Aspirantes al Ejercicio a la Abogacía rindió una recomendación desfavorable a la petición de readmisión a la abogacía. Fundamentó su posición en la insistencia del señor Pacheco Nieves en que era inocente de los hechos delictivos imputados, por los que resultó convicto.

En In re: Pedro Colton Fontán I[8] expresamos que el asunto ante la consideración de este Tribunal cuando se solicita la readmisión a la abogacía es si el peticionario es una persona apta para ejercer la profesión de abogado por estar arrepentido de la conducta que produjo su suspensión, porque está rehabilitado y goza de buena reputación en su comunidad.    La prueba incontrovertida presentada ante la Comisión en el caso ante nos demuestra que éste tiene una buena relación con sus familiares, goza de buena reputación en la comunidad en que ha trabajado; que se ha mantenido al día en el estudio de la jurisprudencia y que a participado en distintos seminarios y adiestramientos en el campo del derecho, particularmente en el laboral.    No obstante, de sus escritos, presentados ante este Tribunal, no surge que esté total y seriamente arrepentido de los hechos, actuaciones o conducta que produjeron su alegación de culpabilidad, pre-acordada.    Por el contrario sus expresiones reflejan que él entiende que sus actuaciones estuvieron justificadas en el momento en que se produjeron.    Su testimonio, refleja que éste no acepta sus actuaciones como un error cometido ni se siente avergonzado por su conducta.    De la transcripción de la prueba oral surgen expresiones del señor Farinacci García, sobre ese asunto, que rezan de la forma siguiente:

LCDO. LEONARDO DELGADO:

Le pregunto, aquí consistentemente se le ha preguntado a los testigos relacionado a el Jorge Farinacci previo a la convicción y el Jorge Farinacci posterior a la convicción, eh, le

---

[8] 2001 T.S.P.R. 91, opinión del 18 de junio de 2001, 154 D.P.R. _____ (2001), 2001 J.T.S. 92.

pregunto a usted que sería yo creo la persona más idónea para contestar, ¿Existe algún cambio alguna evolución en el pensamiento de ese Jorge Farinacci previo a 1992-93 cuando resultó convicto y ese Jorge Farinacci que tenemos posterior a 1995 cuando es excarcelado?

SR. JORGE FARINACCI GARCIA:

Bueno en cuanto al pensamiento político de uno específicamente se refiera a eso, bueno obviamente hay una evolución en la medida en que uno a base de las experiencias y a base de su análisis va teniendo una comprensión superior sobre la problemática de su país y en ese sentido pues sí ha habido una evolución y ha habido una transformación del pensamiento sobre algunos aspectos.

LCDO. LEONARDO DELGADO:

¿Podría para profundizar en qué aspectos usted entiende que ha evolucionado su pensamiento?

SR. JORGE FARINACCI GARCIA:

Bueno principalmente, evidente-mente pues con los años pues uno hace retrospección en términos de las cosas en que **nosotros nos vimos envueltos y específicamente yo a fines de los 70´ y a principios de los 80´ participé activamente en una determinación que tomó un sector importante de [sic] independentismo puertorriqueño de levantarse en armas ante la situación de atropello y de persecución que sentíamos en aquel momento obviamente en la medida en que ha pasado el tiempo, en la medida en que han transcurrido eventos, en la medida en que uno ha adquirido experiencia pues ese pensamiento se ha transformado y evidentemente también se ha transformado la sociedad en la medida y en el sentido que se han abierto espacios democráticos que nos han permitido a nosotros tener la oportunidad de expresarnos, y de organizarnos, y de trabajar por nuestros ideales dentro de ese marco.**

LCDO. LEONARDO DELGADO:

¿Podría ser un ejemplo el cambio de pensamiento suyo que usted refleja en el 70 al pensamiento de ir a la vía eleccionaria en el 1996 un ejemplo de ese cambio?

SR. JORGE FARINACCI GARCIA:

Definitivamente.

LCDO. LEONARDO DELGADO:

Le pregunto, eh, créame me dejó sin preguntas. Este, le pregunto, usted está solicitándole a este honorable comité que lo recomiende para ejercer la profesión legal en Puerto Rico. ¿Por qué usted entiende está capacitado para ejercer esa profesión de abogado en Puerto Rico?

SR. JORGE FARINACCI GARCÍA:

Bueno yo entiendo que yo estoy igual de capacitado que la mayoría de los abogados ni más, ni menos verdad, y en ese sentido pues profesionalmente siento que puedo hacer un trabajo importante para un sector donde yo sí me consta de que la representación legal es escasa y en ese sentido pues a mí me gustaría seguir aportando más al pueblo trabajador desde esa perspectiva pero obviamente también hay otras razones por las cuales yo quisiera ser abogado, lo hago también por mi familia.

LCDO. LEONARDO DELGADO:

¿Podría explicarnos por qué por su familia?

SR. JORGE FARINACCI GARCIA:

**Por varias razones por mi familia, en primer lugar principalmente porque pues la suspensión indefinida aunque para mí, y eso lo quiero dejar claro, para mí la he entendido perfectamente y nunca me he sentido avergonzado sino que he asumido la responsabilidad que eso significó, eso ha causado mucha tristeza en mi familia y ahora mismo también yo necesito los recursos**

**económicos por ejemplo para mantener a mi familia y especialmente a mis hijos que estudian en la universidad y también yo entiendo que es importante y en el caso mío en particular para que nosotros podamos sentir en carne propia que esos espacios democráticos que se han ido abriendo, se abren en la realidad y que eso es bien importante para todos nosotros el poder percibir en lo concreto lo que ya se ha manifestado como ideología pública en un cambio también que ha habido en la sociedad puertorriqueña de mucho más tolerancia hacia las ideas disidentes o hacia las ideas que no son o antes no era aceptables.** (Énfasis suplido).

Sobre el uso de la violencia para adelantar fines políticos declaró lo siguiente:

LCDO. ALCIDES OQUENDO SOLIS:

**¿Qué cree usted ahora en términos del uso de la violencia para avanzar fines políticos?**

SR. JORGE FARINACCI GARCIA:

**No la uso.**

LCDO. ALCIDES OQUENDO SOLIS:

**¿La apoya?**

SR. JORGE FARINACCI GARCIA:

**No la apoyo porque no ha ocurrido y no ha habido la necesidad de que ocurra y espero y confío en que jamás vuelvan a ocurrir las condiciones para que algunos buenos hijos de este pueblo quizás equivocadamente se vean en la necesidad de hacer eso.** (Énfasis suplido).

El peticionario no demuestra arrepentimiento por sus actuaciones constitutivas de delito grave. Justifica las mismas a base de una alegada situación y la presencia de unas condiciones en Puerto Rico para la época en que incurrió en tal conducta delictiva. Pretende dejar las puertas abiertas,

con este precedente, para que de volverse a repetir en Puerto Rico en el futuro esa alegada situación y condiciones, hijos de esta Isla que vean como él la necesidad de incurrir en conducta similar a la suya, puedan hacerlo. Sostiene tal posición como una justa y fundamentada en el derecho internacional. Pretende ser un ejemplo para las generaciones futuras que puedan pensar en utilizar métodos similares a los suyos en el futuro, de ser necesario según su criterio.

## III

El abogado tiene la obligación de evitar la práctica ilegal de la abogacía o la notaría por personas no autorizadas para ello. Es impropio de un abogado el permitir o facilitar a una persona o entidad que no esté autorizada a ejercer la abogacía o el notariado **a que cobre total o parcialmente por los servicios profesionales o** notariales prestados por el abogado. Es indebido que un abogado o firma legal permita que personas no autorizadas a ejercer la profesión de abogado o notario en Puerto Rico suministren **cualquier clase de consejo legal a clientes del abogado o de la firma legal** aun cuando para ello dichas personas no tengan que comparecer a los tribunales. Esto no impide que el abogado o la firma legal se asesore con una persona no autorizada a ejercer la abogacía en Puerto Rico para prestar un mejor servicio a su cliente. **Es impropio de un abogado el unirse en sociedad con una persona que no ha sido autorizada a ejercer la abogacía o la notaría cuando cualquiera de las**

**actividades de la sociedad envuelva la práctica de la abogacía o la notaría.[9]**

De la transcripción de la prueba oral surgen fuertes indicios que el peticionario brindaba asesoramiento o consejería legal a clientes del Instituto de Derecho Laboral, que él creó para prestar servicios legales, entre otras funciones, durante el período de su suspensión de la abogacía. Veamos.

El peticionario presentó varios testigos que declararon sobre su reputación y sus experiencias de trabajo con éste. A continuación transcribimos el testimonio de su primer testigo el señor Jorge L. Cruz Negrón. Su testimonio reza de la forma siguiente:

> LCDO. LEONARDO DELGADO:
>
> Mi primer testigo sería el Sr. Jorge Cruz, Presidente de la **"Ininteligible** International Union"
>
> LCDA. BELEN GUERRERO CALDERON:
>
> Por favor puede sentarse y recuerde que va a hablar lo más alto que pueda para que todos podamos oír claramente su testimonio. Acérquese al micrófono.
>
> LCDO. LEONARDO DELGADO:
>
> Don Jorge Cruz buenos días y hablando con la voz más fuerte posible, díganos su nombre completo.
>
> SR. JORGE L. CRUZ NEGRON:
>
> Buenos días, mi nombre es Jorge L. Cruz Negrón.
>
> LCDO. LEONARDO DELGADO:
>
> ¿Don Jorge a qué usted se dedica?

---

[9] Canon 33 de Ética Profesional, 4 L.P.R.A. Ap. IX; In re: Gregorio Ayuso Ramírez, 102 D.P.R. 65 (1974).

SR. CRUZ NEGRON:

Soy Presidente de la Unión la **ininteligible** de Puerto Rico.

LCDO. LEONARDO DELGADO:

Anterior a ser presidente a la **"ininteligible** International Union" a qué usted se dedicaba.

SR. CRUZ NEGRON:

Era mecánico electricista en la Industria Lechera de Puerto Rico.

LCDO. LEONARDO DELGADO:

Le pregunto, conoce usted o no conoce al Sr. Jorge Farinacci García.

SR. CRUZ NEGRON:

Sí lo conozco.

LCDO. LEONARDO DELGADO:

¿Desde cuándo usted conoce al Sr. Jorge Farinacci García?

SR. CRUZ NEGRON:

Aproximadamente quince (15) años.

LCDO. JOSE GUILLERMO VIVAS:

Perdone la interrupción, ¿El nombre del?

LCDO. LEONARDO DELGADO:

Jorge Cruz.

LCDO. JOSE GUILLERMO VIVAS:

Jorge Cruz, era para estar seguro.

LCDO. LEONARDO DELGADO:

Le agradeceré Don Jorge que en la medida que sea posible levante un poco la voz. ¿Desde cuándo conoce al Sr. Jorge Farinacci García?

SR. CRUZ NEGRON:

Aproximadamente hace quince (15) años.

LCDO. LEONARDO DELGADO:

¿Y por qué lo conoce?

SR. CRUZ NEGRON:

Porque en aquel entonces él fue asesor legal de la **ininteligible** de Puerto Rico para Industria Lechera.

LCDO. LEONARDO DELGADO:

Y actualmente, ¿Qué relación si alguna usted guarda con Jorge Farinacci García?

SR. CRUZ NEGRON:

**Ahora es asesor en los casos de arbitraje y en los casos de negociación colectiva.**

LCDO. LEONARDO DELGADO:

Le pregunto, podría detallar las funciones que realiza Jorge Farinacci García la "**ininteligible** International Union"

SR. CRUZ NEGRON:

**Sí, eh, cuando tenemos cualquier disputa entre el patrono y los empleados, pues, cuando los casos van para arbitraje pues el compañero Farinacci es el que nos asesora en la forma de llevar los casos en lo que tiene que ver con relacionado a la ley y o en las negociaciones colectivas, pues las distintas peticiones, las solicitudes que se hacen a los patronos.**

LCDO. LEONARDO DELGADO:

Sí, le pregunto, además de asistir a la unión en casos ante el negociado de consideración [sic] y arbitraje y de asistirlos en las negociaciones colectivas, ¿Qué otra función si alguna realiza Farinacci para la Unión?

SR. CRUZ NEGRON:

Sí en adiestramientos, en seminarios para los compañeros trabajadores.

LCDO. LEONARDO DELGADO:

Si usted fuera a evaluar el desempeño de Farinacci con la Unión que usted representa. ¿Cómo usted lo categorisaría?

SR. CRUZ NEGRON:

Hace una labor excelente.

LCDO. LEONARDO DELGADO:

El conocimiento del señor Farinacci sobre el área de trabajo, ¿Cómo usted lo categorisaría?

SR. CRUZ NEGRON:

No, es una, un conocimiento sumamente amplio y muy serio y responsable.

...

LCDO. ALCIDES OQUENDO SOLIS:

Nos indica que ahora que es presidente de la unión comparte mucho más de lo que hacía antes, ¿Es correcto?

SR. CRUZ NEGRON:

Eso es correcto.

LCDO. ALCIDES OQUENDO SOLIS:

¿Ese compartir en qué consiste?

SR. CRUZ NEGRON:

**Bueno eso [sic] compartir consiste en que pues en aquel momento yo era delegado de Industria Lechera, yo trabajada mis ocho (8) horas dentro de la Industria Lechera y compartía con el señor Farinacci en los casos cuando íbamos a ver vistas en arbitraje. Ahora el ser presidente de la unión pues comparto más porque me asesoro con él relacionado a las negociaciones de**

> **los convenios a los casos globales de la Unión de Arbitraje, no exclusivamente de Industria Lechera como antes, o sea que estamos más en comunicación.**

Se estipuló el testimonio de varios otros testigos del peticionario como prueba acumulativa. El récord, sobre este asunto reza de la forma siguiente:

LCDO. LEONARDO DELGADO:

> Eh, Procuradora, perdón, y estamos aquí discutiendo una posible oferta de estipulación con relación **a todos los testigos que son presidentes de unión y que el Sr. Jorge Farinacci le ha servido de asesor legal en mediación, en negociación y arbitraje y le estoy ofreciendo aquí un pequeño proyecto de estipulación porque entiendo y ellos también me han hecho ese señalamiento que el testimonio de estos testigos adicionales que son presidentes de unión sería prueba repetitiva con relación a lo que ya testificó Jorge Cruz, Presidente...**

LCDA. BELEN GUERRERO CALDERON:

> El Primer testigo.

LCDO. LEONARDO DELGADO:

> De la **ininteligible** International Union, eh, si nos permite un segundo podríamos llegar a ese acuerdo.

LCDA. BELEN GUERRERO CALDERON:

> Cómo no sí, como no claro.

LCDO. DOEL QUIÑONES NÚÑEZ:

> Pregunto de los otros siete testigos todos estarían en ese grupo o habría alguno...

LCDO. LEONARDO DELGADO:

> De los otros siete (7) testigos, cinco (5) estarían en ese grupo.

LCDO. DOEL QUIÑONES NÚÑEZ:

Ok, o sea que serían asesores...

LCDO. JOSE G. VIVAS:

Es prueba acumulativa.

LCDO. DOEL QUIÑONES NÚÑEZ:

**¿Eso sería una estipulación a efectos de que el peticionario es asesor laboral de esas personas?**

LCDO. LEONARDO DELGADO:

**Sí, así es. El testimonio de ellos conllevaría y estamos en disposición de estipular y los compañeros comisionados también están dispuesto a estipular, que por ejemplo el Sr. Alejandro de Jesús, Presidenta da [sic] la Asociación de Empleados Gerenciales de la Autoridad de Acueductos y Alcantarillados conoce al Sr. Jorge Farinacci, que lo conoce en su calidad de profesional como asesor laboral en asuntos de negociación colectiva y que de testificar, testificaría que es un excelente mediador, que un excelente negociador, que es un excelente representante de el [sic] sector laboral en procedimientos de arbitraje.**

LCDA. BELEN GUERRERO CALDERON:

**En otras palabras sería prueba acumulativa en relación con el testimonio del primer testigo.**

LCDO. LEONARDO DELGADO:

**Sí y que creen que rinde con todos los requisitos básicos o elementales para ser abogado de igual manera esa sería la misma oferta para el Sr. Wilfredo Gotay Tirado, Presidente de los Trabajadores Unidos de la A.M.A.; sería la misma oferta para el Sr. Francisco Toledo, Miembro del Capítulo de Recursos Naturales de Servidores Públicos Unidos; sería la misma oferta para el Sr. Luis Valderrama, Presidente de la Unión de Tronquistas de Puerto Rico y sería la misma oferta para el Sr. José Morales, miembro jubilado de**

**la Unión Independiente de Empleados Telefónicos.**

LCDO. JOSE G. VIVAS:

**¿O sea que viene siendo lo que dijo la compañera que es prueba acumulativa?**

LCDA. YVONNE CASANOVA PELOSI:

**Sí.**

LCDO. LEONARDO DELGADO:

Sí.

LCDO. JOSE G. VIVAS:

Van a declarar más o menos lo mismo.

LCDA. BELEN GUERRERO CALDERON:

Entonces para yo eh...

LCDO. LEONARDO DELGADO:

¿Los compañeros están en disposición de estipular lo que yo acabo de informar?

LCDO. ALCIDES OQUENDO SOLIS:

Es correcto.
                    ...

LCDA. BELEN GUERRERO CALDERON:

Entonces yo quisiera que usted me dijera para yo marcar en mi lista cuáles son los testigos que no están en ese grupo. El Dr. Córdova Iturregui acaba de declarar.

LCDO. LEONARDO DELGADO:

Sí, no están en ese grupo solamente dos (2) personas que...

LCDA. BELEN GUERRERO CALDERÓN:

Las dos (2) abogadas.

LCDO. LEONARDO DELGADO:

**Que sería la Lcda. Sonia Serrano y sería la Lcda. Vivian Godileaux.**

LCDA. BELEN GERRERO CALDERON:

¿Me pude deletrear ese Godileaux?

LCDO. DOEL QUIÑONES NÚÑEZ:

Godileaux.

LCDA. BELEN GUERRERO CALDERON:

Godileaux, ok.

LCDO. LEONARDO DELGADO:

Gracias profesor. Y perdone que le diga profesor pero es el respeto que le tengo.

LCDO. DOEL QUIÑONES NÚÑEZ:

Muchas gracias yo prefiero ese título a otro.

LCDA. BELEN GUERRERO CALDERON:

Definitivamente.

LCDA. YVONNE CASANOVA PELOSI:

Igual que Chiesa.

LCDA. BELEN GUERRERO CALDERON:

¿Entonces usted se propone presentar los testimonios de las licenciadas Godileaux y Serrano?

LCDO. LEONARDO DELGADO:

**De ambos testimonios pretendo presentar el de la Lcda. Vivian Godileaux, el testimonio de la Lcda. Sonia Serrano lo pongo a disposición de los compañeros por si desean contrainterrogar...**

LCDA. BELEN GUERRERO CALDERON:

Muy bien.

LCDO. LEONARDO DELGADO:

**Porque ambas compañeras básicamente testificarían sobre lo mismo.**

LCDA. BELEN GUERRERO CALDERON:

Pues entonces vamos a llamar a la Lcda. Vivian Godileaux. (Énfasis suplido)

El testimonio de la licenciada Vivian Alice Godileaux Villaronga, abogada del Instituto de Derecho Laboral, reza de la forma siguiente:

LCDO. LEONARDO DELGADO:

Sí, su nombre completo para efectos del registro.

LCDA. VIVIAN GODILEAUX:

Vivian Alice Godileaux Villaronga.

LCDO. JORGE V. VIVAS:

Perdóneme que hable duro que yo soy un poquito bastante sordo.

LCDO. LEONARDO DELGADO.

Le agredeceremos que hable con voz bien fuerte.

LCDA. VIVIAN GODILEAUX:

Cómo no Vivian Alice Godileaux Villaronga.

LCDO. LEONARDO DELGADO:

Eh, ¿Licenciada?

LCDA. VIVIAN GODILEAUX:

Licenciada.

LCDO. LEONARDO DELGADO:

¿Licenciada a qué usted se dedica?

LCDA. VIVIAN GODILEAUX:

**Soy abogada y trabajo actualmente en el Instituto de Derecho Laboral con**

**el Sr. Jorge Farinacci y el Lcdo. César Rosado.**

LCDO. LEONARDO DELGADO:

Le pregunto, cuándo usted fue admitida al ejercicio de la profesión legal.

LCDA. VIVIAN GODILEAUX:

En el año 1997.

LCDO. LEONARDO DELGADO:

Le pregunto, qué relación si alguna usted guarda con el Colegio de Abogados de Puerto Rico.

LCDA. VIVIAN GODILEAUX:

Pertenezco al Colegio de Abogados de Puerto Rico, fui delegada por Ponce, fui secretaria de la Junta de Gobierno del Colegio de abogados hasta hace unos meses debido a que..., no soy la secretaria actualmente debido a que me mude para San Juan y al ser delegada por Ponce y cambiar de delegación por reglamento pues no puedo pertenecer a la Junta de Gobierno.

Actualmente estoy en la Junta de Directores de la Corporación de Servicios Legales.

LCDO. LEONARDO DELGADO:

Le pregunto si conoce o no conoce al Sr. Jorge Farinacci García.

LCDA. VIVIAN GODILEAUX:

Lo conozco.

LCDO. LEONARDO DELGADO:

¿Desde cuándo usted conoce al Sr. Jorge Farinacci García?

LCDA. VIVIAN GODILEAUX:

Hace varios años.

LCDO. LEONARDO DELGADO:

Podríamos precisar más o menos cuantos años hace que lo conoce.

LCDA. VIVIAN GODILEAUX:

Lo conozco más o personalmente he tenido más contacto desde hace como un año y medio.

LCDO. LEONARDO DELGADO:

OK, y durante ese año y medio que usted ha tenido contacto con el Sr. Jorge Farinacci García en qué ha consistido ese contacto.

LCDA. VIVIAN GODILEAUX:

**Trabajo como ya dije en el Instituto de Derecho Laboral una vez yo me mudo de Ponce, trabajaba en un bufete en Ponce eh, el Sr. Jorge Farinacci me abrió las puertas del Instituto de Derecho Laboral para que pudiera trabajar allí junto con él, me ha orientado en muchos aspectos jurídicos cuando he necesitado orientación específicamente en derecho laboral, trabajamos en conjunto algunos casos para la Unión de Tronquistas entre otras cosas.**

LCDO. LEONARDO DELGADO:

Le pregunto a mencionado consecuentemente el Instituto de Derecho Laboral, nos gustaría que le aclarara a la Honorable Comisión, ¿Qué es el Instituto de Derecho Laboral?

LCDA. VIVIAN GODILEAUX:

**El Instituto de Derecho Laboral es una organización compuesta por abogados y otras personas que conocen las leyes verdad y el campo laboral que le da representación legal a diferentes instituciones, uniones y a diferentes personas, de ciudadanos que necesitan orientación o necesitan representación en el campo laboral en los tribunales de Puerto Rico. También dan orientaciones y seminarios etcétera a las personas que así lo necesiten.**

LCDO. LEONARDO DELGADO:

**Le pregunto cuál es la participación de Jorge Farinacci dentro del Instituto de Derecho Laboral.**

LCDA. VIVIAN GODILEAUX:

**Es quien realmente presidente [sic] y es el líder del Instituto de Derecho Laboral.**

LCDO. LEONARDO DELGADO:

Y le pregunto en ese compartir suyo con Jorge Farinacci en este último año y medio cómo usted categoriza en términos profesionales al Sr. Jorge Farinacci García.

LCDA VIVIAN GODILEAUX:

En mi opinión entiendo es una persona excelente, capacitada para ejercer sus funciones como abogado, como ser humano es una persona excelente también, muy generoso, es una persona bien solidaria con todo lo que significa la lucha por la justicia y por la ayuda a las personas en los ciudadanos de este país y es una persona bien conocedora del derecho y de otras áreas importantes como la filosofía y otras áreas del conocimiento.

LCDO. LEONARDO DELGADO:

Le pregunto si me podría especificar, a parte de ser miembro del Instituto de Derecho Laboral si conoce qué otras prácticas realiza el Sr. Jorge Farinacci García.

LCDA. VIVIAN GODILEAUX:

El es profesor de Derecho Laboral en la Universidad de Mayagüez en la Hostos, también asesor a organizaciones obreras...

LCDA. BELEN GUERRERO CALDERON:

¿Perdón usted dijo la Universidad de Hostos la Escuela de Derecho?

LCDA. VIVIAN GODILEAUX:

Sí en la escuela de derecho, asesor de organizaciones obreras, es líder en otras organizaciones también.

LCDO. LEONARDO DELGADO:

Le pregunto, como miembro del Colegio de Abogados y como inclusive hasta Secretaria del Colegio de Abogados en un momento dado si conoce usted o no conoce el Código de Ética de la profesión legal.

LCDA. VIVIAN GODILEAUX:

Lo conozco.

LCDO. LEONARDO DELGADO:

Sí, a la luz del Código de Etica durante la profesión legal, de nuestra profesión ¿Cómo usted categoriza al compañero Sr. Jorge Farinacci García con relación a ese código, él representa los valores de ese código o no los representa?

LCDA. VIVIAN GODILEAUX:

**En mi opinión representa los valores del código con su responsabilidad para los tribunales, responsabilidad para la sociedad y para los compañeros de la profesión.**

LCDO. LEONARDO DELGADO:

Con relación a los valores que establece ese código el conocimiento consistente del derecho laboral, Jorge Farinacci ha mantenido o no ha mantenido ese desarrollo intelectual que promueve ese código.

LCDA. VIVIAN GODILEAUX:

Entiendo que sí en mi opinión sí, en mi opinión está al día con respecto al desarrollo o los casos, no, del Código de Etica y de la Jurisprudencia en otras áreas del derecho.

LCDO. LEONARDO DELGADO:

¿Considera usted o no considera que el Sr. Jorge Farinacci García debe ser admitido al ejercicio de la abogacía en Puerto Rico?

LCDA. VIVIAN GODILEAUX:

Entiendo que debe ser admitido.

LCDO. LEONARDO DELGADO:

¿Por qué?

LCDA. VIVIAN GODILEAUX:

**Pues porque es una persona que está capacitada para ejercer la profesión de abogado, además de que él conoce el derecho y éticamente puede..., es un ejemplo éticamente porque este, lo que yo he visto en su diario vivir, en su trabajo diario en el Instituto de Derecho Laboral así lo manifiestan.**

LCDO. LEONARDO DELGADO:

Eh, pongo a disposición de los compañeros.

LCDA. BELEN GUERRERO CALDERON:

Lcda. Casanova.

LCDA. YVONNE CASANOVA PELOSI:

Sí, buenos días testigo mi nombre es Yvonne Casanova y yo represento a la Oficina del Procurador General.

LCDA. VIVIAN CASANOVA PELOSI:

**Una pregunta testigo, ¿Cómo es que funciona el Instituto de derecho laboral? Usted dice que el Lcdo. Farinacci es el que lo preside. ¿Cúantos abogados hay en ese Instituto?**

LCDA. VIVIAN GODILEAUX:

**Actualmente somos dos abogados, el Lcdo. César Rosado y ésta servidora.**

LCDA. YVONNE CASANOVA PELOSI:

**¿Y cómo es que se hace el asesoramiento, cómo se asignan los abogados, cómo es que funciona si alguien necesita los servicios del Instituto cómo es que se contratan esos servicios?**

LCDA. VIVIAN GODILEAUX:

**Se contratan, este..., lo que pasa es el Instituto de Derecho Laboral le da asesoramiento y tiene uniones a quienes representa, también a creado ya una fama en la cuál muchas personas van allí a buscan [sic] asesoramiento legal cuando tienen algún problema de despido o algún problema laboral aunque no sean unionados y los dividimos dependiendo de la carga de trabajo de cada abogado o sea, es como, funciona como si fuera un bufete lo que pasa es que no es un bufete de abogados. Pero es básicamente igual.**

LCDA. YVONNE CASANOVA PELOSI:

**¿Y la función del peticionario es una de administrativa o de asesoramiento legal ahí?**

LCDA. VIVIAN GODILEAUX:

Del..., no entendí la pregunta, del peticionario de...

LCDA. YVONNE CASANOVA PELOSI:

**Usted dice que él preside, ¿Cuál es la función del como presidente del Instituto de Derecho Laboral?**

LCDA. VIVIAN GODILEAUX:

**Lo que pasa que no es... él no es..., la palabra presidente no sé si se pueda poner en este aspecto porque no es una corporación que tiene una junta de directores con un presidente y un tesorero etcétera, si no que él es quien crea, yo no estuve cuando se creo [sic] pero inicialmente es quien crea el Instituto de Derecho Laboral y tiene abogados allí para ayudar a las personas y para asesorar personas y si hay algún caso en el cual se contrata**

**cliente se le cobra por debajo de lo que normalmente le cobraría un bufete.**

LCDA. YVONNE CASANOVA PELOSI:

Pero cuáles...

LCDA. VIVIAN GODILEAUX:

**Y él está allí básicamente, pues para la administración del Instituto porque obviamente pues no va al tribunal pero para la administración del instituto y se reúnen se discuten casos, cuando hay que buscar asesoramiento que él nos diga ese tipo de cosas, pero es básicamente cuando presidente [sic] es porque lo administra.** (Énfasis suplido).

Sobre la forma de facturar los servicios prestados por el Instituto de Derecho Laboral, los honorarios de los abogados y el ingreso recibido por el señor Farinacci García, éste declaró lo siguiente:

LCDO. JOSE G. VIVAS:

Yo solamente quería hacerle una pregunta sobre el instituto, ¿Cómo se llama el instituto...?

SR. JORGE FARINACCI GARCIA:

Instituto de Derecho Laboral, sí.

LCDO. JOSE G. VIVAS:

¿Eso es un ente corporativo o una sociedad profesional?

SR. JORGE FARINACCI GARCIA:

**No, eso es una..., en realidad es un espacio físico donde se coordina servicios a sindicatos de diferentes personas que están dispuestos en diferentes formas a darle servicios a trabajadores, pero no tiene...**

LCDO. JOSE G. VIVAS:

**¿Entonces se factura por Instituto a quien a la persona que va o...?**

SR. JORGE FARINACCI GARCIA:

**No por ejemplo los abogados facturan por su cuenta.**

LCDO. JOSE G. VIVAS:

**¿Por su cuenta?**

SR. JORGE FARINACCI GARCIA:

**Por su cuenta correcta [sic]. El Instituto lo que hace es facilitar que los trabajadores tengan un sitio donde puedan conseguir un abogado.**

LCDO. JOSE G. VIVAS:

**O sea más bien lo que hacen es comparten los gastos y cado [sic] uno...**

SR JORGE FARINACCI GARCIA:

**Compartimos los gastos pero más que eso, o sea, cuando una unión obrera quiera un abogado que le vea un caso a un trabajador y no puede conseguir un abogado porque a lo mejor son muy caros, ect., o no conoce bien el campo tiene ese servicio disponible, correcto.**

LCDO. JOSE G. VIVAS:

**¿Se representan individualmente los abogados?**

SR. JORGE FARINACCI GARCIA:

**Correcto.**

LCDO. DOEL QUIÑONES NÚÑEZ:

**¿La función es como si fueran unos gestores o lo que en inglés se llama como un "Clearing House", como que sirve de un mecanismo de referimiento?**

SR. JORGE FARINACCI GARCIA:

Es correcto, lo único que está todo físicamente en el mismo lugar, se organizan también los seminarios se

hace mucho tipo de actividades cuando una unión obrera por ejemplo tiene una campaña allí también se le hace boletines, se le de da literatura para que estén en mejor condiciones de participar en esa campaña por ejemplo para lograr la sindicación ese tipo de servicios.

LCDO. CARLOS V. DAVILA:

**¿Y usted recibía retribución?**

SR. JORGE FARINACCI GARCIA:

**Yo sí, yo recibo retribución por el trabajo que yo realizo, correcto.**

LCDO. CARLOS V. DAVILA:

**¿Lo facturaba a la unión?**

SR. JORGE FARINACCI GARCIA:

**No, no facturo a la unión, en las uniones en las que yo trabajo específicamente se acordaron los servicios que son Negociado de Conciliación y Arbitraje y Negociaciones Colectivas y hay una paga mensual fija, a las uniones obreras se les hace difícil pagar por hora porque tienen presupuestos ajustados.**

Constituye un elemento necesario que tiene que demostrarse a este Tribunal por un abogado suspendido de la profesión que entiende que es acreedor a ser reinstalado por haberse arrepentido de su conducta y porque alega está totalmente rehabilitado, que ha cumplido a cabalidad con las condiciones y acepta las consecuencias de la separación de la profesión de abogado que la referida suspensión implica. Concluimos que el aquí peticionario no ha demostrado a este Tribunal que cumplió con tales requisitos. Por el contrario la prueba presentada por él refleja que no cumplió con las condiciones impuestas por este Tribunal al suspenderlo y no aceptó totalmente sus consecuencias.

IV

Por los fundamentos antes expuestos disentimos de lo actuado por la Mayoría por entender que no están presentes, en este momento, las circunstancias que la norma vigente sentada por este Tribunal exige, para que resulte procedente la reinstalación de un abogado suspendido, convicto de un delito grave que implica depravación moral.


EFRAIN E. RIVERA PEREZ
JUEZ ASOCIADO