In re Francisco Figueroa Maestre, querellado.

No. 8.—*Visto:* Diciembre 4, 1928. *Resuelto:* Diciembre 17, 1928.

*J. B. Huyke, F. González Fagundo* y *M. Benítez Flores,* abogados del querellado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

En mayo 8, 1914, Figueroa Maestre fué suspendido en el ejercicio de la profesión en las cortes de la isla. Ahora ha radicado una petición de rehabilitación. Si bien la petición misma no contiene ninguna manifestación errónea sobre los deberes y responsabilidades de esta corte, sin embargo, durante la vista fueron examinados varios testigos y se presentaron argumentos evidentemente bajo la teoría de que

el peticionario había sido castigado suficientemente, que había sufrido bastante y que esta corte debía ejercer su poder inherente para perdonarle. En otras palabras, si bien los letrados del peticionario presentaron otros argumentos, se nos suplicó encarecidamente, tal cual si ocupáramos un puesto como el de Gobernador, que consideráramos la suficiencia del castigo. El deber o la responsabilidad nuestra es enteramente distinto. Posiblemente varios meses o un año podrían dar derecho a un peticionario a ser rehabilitado en el ejercicio de su profesión. La cuestión siempre es la integridad actual del peticionario después de haber sido suspendido en el ejercicio de su profesión. Un abogado tiene enormes privilegios y graves responsabilidades y la sociedad debe ser protegida de una persona que no esté moralmente preparada. Hemos hallado una discusión muy hábil de esta cuestión, así como una revisión de los casos en el de *In re Egan*, (S. D.), resuelto el 17 de febrero de 1928, 218 N. W. 1. Después de hacer una revisión parcial, la corte dijo:

"Bajo estos principios fundamentales, necesariamente tenemos que asumir que la cuestión sometida a la consideración de esta corte en virtud de la solicitud de rehabilitación presentada por un abogado que había sido suspendido en el ejercicio de su profesión, no es, haciendo un análisis final, si el peticionario ha sido suficientemente castigado por su falta anterior, sino si al tiempo de hacer su solicitud goza de tal reputación que justifique su admisión al ejercicio de la profesión."

Posteriormente la corte citó lo siguiente de una decisión anterior, o sea, de *In re Morrison,* 45 S. D. 123, 186 N. W. 556:

"Pero cuando después de un juicio completo e imparcial se le castiga de tales faltas que demuestren su incapacidad para actuar como un funcionario de las cortes de justicia y se le ha revocado su licencia, si solicita su rehabilitación el peso de la prueba recae sobre él para establecer mediante evidencia satisfactoria, bien que la corte ha cometido error en su sentencia suspendiéndole en el ejercicio de su profesión, o que su conducta moral ha cambiado tanto que le habilite para disfrutar del puesto y de la confianza que una

vez fueron en él depositados. Una corte debe ser muy cautelosa al suspender en el ejercicio de la profesión a un abogado, pero debe ser aún más cautelosa para rehabilitarlo; debe estar absolutamente segura de que no pone nuevamente en las manos de un peticionario poco digno de confianza, esa oportunidad casi ilimitada que tiene un abogado en ejercicio para hacer daño a la sociedad. Por tanto, la corte está en el deber al presentársele una solicitud de rehabilitación por un abogado que ha sido suspendido, de tratar no solamente, mediante vistas celebradas en la corte, sino valiéndose de cualquier forma legítima· que pueda utilizar, obtener toda la información que le sea posible respecto a la integridad moral del peticionario para ser admitido al ejercicio de su profesión.''

La corte está·en el sagrado deber de hacer cuanto le sea humanamente posible para impedir que ocurran nuevamente la clase de actos por el cual el peticionario fué suspendido de la profesión, o que cometa otras faltas. No nos detendremos a revisarlos cuidadosamente. Son expuestos claramente en 20 D.P.R. 425. Podría decirse, sin embargo, que el fundamento de los cargos era que el peticionario no solamente era infiel a sus clientes, sino que también usaba su despacho para defraudarlos. Les formulaba cargos falsos a los clientes y los amenazaba con acusarlos cuando le pedían que les devolviera su dinero.

■ ¿Ha experimentado el peticionario, usando sus propias palabras, tal ''regeneración'' que merezca su rehabilitación en el ejercicio de su profesión? En una investigación de esta clase es imposible la certeza absoluta, pero el peticionario ha hecho todo esfuerzo y la prueba presentádanos es de tal naturaleza fuerte que nos obliga a declarar con lugar la petición.

De la jurisdicción a que pertenece el peticionario, o sea, Arecibo, prácticamente todo el Colegio de Abogados, incluyendo al juez de distrito y al fiscal, declararon sobre su actual preparación moral. Profesionales, funcionarios públicos, hombres de negocios, ciudadanos particulares residentes en el mismo pueblo del peticionario, Utuado, aseveraron su confianza en él. Los abogados del vecino distrito de

Aguadilla, igualmente endosaron la petición, según lo hicieron los principales letrados de Mayagüez. El Colegio de Abogados de San Juan en una sesión pública expresó su cooperación. Expresiones similares de confianza fueron recibidas de los abogados de Ponce, Guayama y Humacao.

La Legislatura de Puerto Rico aprobó una Resolución Concurrente recomendando la rehabilitación del peticionario. Desde luego, la responsabilidad para con el público recae sobre esta corte y no sobre la Legislatura y así lo reconoce la resolución. Durante la vista se desprendió igualmente que la resolución de la Legislatura no era *pro forma* sino que los varios comités, compuestos en gran parte de abogados, practicaron una investigación respecto del carácter y la conducta del peticionario.

La naturaleza de la prueba presentada, en su mayor parte distinta de la del caso de Egan, *supra,* se basaba aparentemente en la apreciación absoluta por parte de los testigos de su responsabilidad como ciudadano. Ellos demostraron que desde el momento en que el peticionario fué suspendido en el ejercicio de su profesión había llevado una vida ejemplar, tanto privada como en los negocios. Se desligó de las cortes, se estableció en un negocio de imprenta y se sostenía a sí mismo parcialmente con los conocimientos que poseía de la música. Testigo tras testigo declararon sobre sus relaciones y experiencia con el peticionario. Nos aseveraron de la buena conducta del peticionario, desde el momento que fué suspendido, sobre su preparación moral al presente y sobre sus méritos personales. Un gran número de ciudadanos particulares declararon que sin vacilación alguna no tendrían inconveniente en confiar al peticionario sus asuntos. El peticionario personalmente ocupó la silla testifical y confesando en efecto su falta anterior dijo que la conducta que había motivado su suspensión fué una aberración en su conducta ordinaria, que se daba cuenta de su responsabilidad y que ahora era un hombre distinto.

Como de las declaraciones prestadas por los testigos que aseveraron ante nos y de la prueba presentada, el peticionario ha demostrado en todo lo que le ha sido posible su regeneración moral, *debe declararse con lugar la petición.*

El Juez Asociado Sr. Texidor no intervino.