
Versión para imprimir

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re | 2011 TSPR 103 |
|---|---|
| Ángel Figueroa Vivas | 182 DPR \_\_\_\_ |

Número del Caso: TS 4270

Fecha: 29 junio de 2011

Abogado de la Parte Peticionaria:

      Lcdo. Felipe Benicio Sánchez

Comisión de Reputación para el Ejercicio de la Abogacía:

      Lcdo. Doel Quiñones Núñez
      Lcda. Belén Guerrero Calderón
      L cda. Waleska Delgado Marrero
      Lcdo. Héctor Saldaña
      Dr. Robert Stolberg

Procurador Especial de la Comisión de Reputación

      Lcdo. Alcides Oquendo Solís

Oficina de la Procuradora General

      Lcda. Edna E. Rodríguez Benítez
      Procuradora General Auxiliar

      Lcda. María A. Hernández Martín
      Procuradora General Auxiliar

Materia: Solicitud de Reinstalación

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones de l proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

ÁNGEL FIGUEROA VIVAS

TS-4270

*PER CURIAM*

En San Juan, Puerto Rico, a 29 de junio de 2011.

El Sr. Ángel Figueroa Vivas fue admitido al ejercicio de la abogacía el 26 de junio de 1973 y al de la notaría el 27 de septiembre de 1973. El 21 de febrero de 1991 este Tribunal lo separó permanentemente del ejercicio de la abogacía y la notaría. In re Colton Fontán, 128 D.P.R. 1 (1991). Los hechos que provocaron la sanción disciplinaria tienen su génesis en los actos y omisiones del señor Figueroa Vivas como director del Negociado de Investigaciones Especiales (NIE) del Departamento de Justicia de Puerto Rico, en relación con los

hechos acontecidos en el Cerro Maravilla el 25 de julio de 1978. En In re Colton Fontán, supra, págs. 112-113, concluimos que el señor Figueroa Vivas incurrió en negligencia crasa que violaba los Cánones 5, 15, 18, 35 y 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

En lo relativo a la actuación del señor Figueroa Vivas, mencionamos:

> Es obvio que el 17 de agosto de 1978 coaccionó al policía Quiñones Quiñones y ejerció presión indebida sobre él para que alterara su declaración sobre las dos ráfagas de disparos, hecho que era incompatible con la versión de defensa propia de la Policía. Sin explicación, destruyó además parte de la declaración jurada inicial que ese testigo le ofreció esa fecha.

> Además, Colton Fontán y Figueroa Vivas, en su desempeño como fiscales independientes y actuando combinadamente, el 17 de agosto de 1978 le ofrecieron empleo al testigo Quiñones Quiñones, y el 26 de julio de 1978, sin previo aviso, se personaron a su residencia en Ponce y lo amenazaron con formularle acusaciones por varios delitos si no alteraba su declaración.

In re Colton Fontán, supra, págs. 107-108.

Una lectura de los párrafos anteriores demuestra que no solo sancionamos al señor Figueroa Vivas por conducir una investigación de forma negligente; también lo sancionamos por intentar ocultar la verdad de los hechos del Cerro Maravilla. El peticionario coaccionó a testigos que participaron en la investigación. Además, destruyó declaraciones juradas de testigos importantes. Al así proceder, encubrió los hechos que ocurrieron el 25 de julio de 1978 en el Cerro Maravilla.

Tiempo después, el señor Figueroa Vivas presentó una "Solicitud de reapertura del caso, nombramiento de

Comisionado Especial y/o se deje sin efecto sentencia". Mediante Resolución de 4 de marzo de 1994, declaramos no ha lugar dicha moción. In re Colton Fontán, 135 D.P.R. 259 (1994).

Posteriormente, el 20 de marzo de 1996 el peticionario solicitó nuevamente la reapertura del procedimiento disciplinario en su contra. El 11 de septiembre de 2002 emitimos una Resolución en la que denegamos su solicitud. Al así proceder, concluimos que el peticionario no cumplió con los requisitos dispuestos en la Regla 188(a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, para que prospere una moción de nuevo juicio fundada en el descubrimiento de prueba nueva. In re Figueroa Vivas, 158 D.P.R. 1, 53 (2002).

Nuevamente, el 10 de diciembre de 2003 el señor Figueroa Vivas presentó ante este Foro una petición de reinstalación al ejercicio de la abogacía que declaramos no ha lugar el 23 de enero de 2004. El 10 de octubre de 2007 el señor Figueroa Vivas presentó una segunda petición de reinstalación que también declaramos no ha lugar el 23 de octubre de 2007. Posteriormente, presentó una moción de reconsideración que consideramos afirmativamente el 13 de noviembre de 2007. Por tal razón, referimos el asunto a la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía.

Luego de concluir con los trámites de publicación de edictos, la Comisión de Reputación celebró vistas evidenciarias los días 7 de abril de 2008, 5 de agosto de

2008 y 4 de marzo de 2009. En ellas, testificaron las siguientes personas: el Lcdo. José Romo Matienzo, el Sr. Perfecto Acevedo Torres, el Sr. Aníbal Vázquez Carrión, el Lcdo. Aníbal Medina Ríos, el Sr. Jorge Burgos Ramos, el Lcdo. Eduardo A. Escribano Román y el peticionario Figueroa Vivas. Por considerarla prueba acumulativa, la representación legal del señor Figueroa Vivas colocó a disposición de la Procuradora General y del Procurador Especial de la Comisión de Reputación los testimonios del Lcdo. Genaro Rodríguez Gerena, del Lcdo. Carlos I. Dávila Coca, del Dr. Orlando Rafael O´Neill, del Sr. Víctor Maldonado Viera, del Sr. Buenaventura Quiñones Matos, del Sr. Ángel Figueroa Cruz y del Sr. Harry Robles.

Al culminar la presentación de la prueba testifical, la Procuradora General sometió su informe oponiéndose a la reinstalación del señor Figueroa Vivas a la profesión de la abogacía. Fundamentó su recomendación en la actitud asumida por el peticionario a través de los años, de negar responsabilidad por sus actuaciones. El peticionario presentó una réplica al informe de la Procuradora General. En la réplica el peticionario cuestionó las que considera las verdaderas razones que llevaron a la Procuradora General a no recomendar su reinstalación. Finalmente, la Comisión de Reputación presentó el 8 de noviembre de 2009 ante la Secretaría de este foro un documento titulado "Informe al Tribunal Supremo". En ese documento, la Comisión de Reputación recomendó denegar la solicitud de reinstalación porque la comunidad estaría en riesgo.

Antes de entrar en los méritos de la negativa de la Comisión de Reputación de reinstalar al señor Figueroa Vivas, es menester considerar los hallazgos que surgen de los testimonios prestados en las vistas y de los documentos sometidos en evidencia.

I

El licenciado Romo Matienzo testificó conocer al peticionario desde su juventud, pues su familia es de Luquillo, y el señor Figueroa Vivas fue maestro de química en ese pueblo. Indicó que fueron compañeros de trabajo en el Negociado de Investigaciones Especiales (NIE) cuando ocurrieron los hechos que dieron lugar a la sanción disciplinaria. Además, reveló que fue testigo del Fiscal Especial Independiente durante las vistas celebradas en 1987 sobre los hechos del Cerro Maravilla. Por último, señaló que no tiene reparo a la reinstalación del peticionario.

Por otro lado, el señor Acevedo Torres indicó que es vecino del señor Figueroa Vivas y que frecuentan la misma congregación religiosa. Señaló, además, que lo conoce hace aproximadamente veinte años y que el peticionario siempre ha sido un buen vecino que socorre a los demás. El señor Vázquez Carrión, residente del municipio de Cidra, conoce al peticionario desde su adolescencia. Aunque la relación entre ellos no es cotidiana lo considera una persona distinguida del municipio de Luquillo.

El licenciado Medina Ríos testificó que conoce al señor Figueroa Vivas hace diez años. Lo considera su

cliente y amigo. A pesar de que conoce los hechos que dieron lugar a la acción disciplinaria porque su esposa fue abogada del peticionario, prefirió no compartir esa información por motivo del privilegio abogado-cliente. En suma, expresó que el peticionario goza de buena reputación y es muy profesional en el desempeño de sus labores.

Asimismo, el señor Burgos Ramos, vecino del señor Figueroa Vivas, expuso que éste es muy servicial en su comunidad y ayuda a las personas necesitadas. Además, indicó que hasta el momento no ha oído nada negativo sobre el peticionario en su comunidad.

Además, todos los testigos puestos a la disposición de los procuradores por constituir prueba acumulativa, declararon que el peticionario goza de buena reputación y de una integridad moral intachable en la comunidad en donde reside.

El señor Figueroa Cruz, hijo del peticionario, manifestó que su padre estudia con regularidad las opiniones que publica el Tribunal Supremo en su portal interactivo. Por otra parte, indicó que su padre le inculca valores de honestidad, honradez y respeto por los derechos ajenos, a las personas con quien comparte.

Por su parte, el licenciado Escribano Román reconoció que no conoce al peticionario, por lo que no podía manifestar si éste se había rehabilitado. Tampoco podía testificar si el peticionario gozaba de buena reputación en la comunidad. Aunque aseguró que cree en el concepto de

rehabilitación, no estaba convencido de que el peticionario lo haya demostrado.

Finalmente testificó el peticionario, señor Figueroa Vivas. Éste aceptó que cometió un error al dar crédito a las declaraciones de policías mendaces. No obstante, indicó que no tiene que arrepentirse de nada porque no actuó de manera ilegal. En específico, el peticionario Figueroa Vivas declaró:

> [A] pesar de que yo no fui la persona que le tomé la declaración, definitivamente a la luz de toda la prueba, admito y eso es lo que he señalado, admito que uno debió haber sido, definitivamente, más incisivo a los fines de haber tratado de conseguir alguna inconsistencia que pudiese haber aclarado el caso. No fue posible, por qué, porque le di, o sea, hasta cierto punto uno puede decir, fue cándido al uno al aceptar la versión de los policías.

Apéndice, pág. 106.

De igual forma, el señor Figueroa Vivas señaló que, a su juicio, se ha mantenido al día sobre el desarrollo del Derecho puertorriqueño. Reconoció que no ha tomado cursos de educación continua durante los más de 19 años en que ha estado separado del ejercicio de la profesión. No obstante, indicó que revisa periódicamente el portal cibernético de la Rama Judicial y que no objeta tener que tomar un curso de repaso de reválida como condición para reingresar a la profesión jurídica.

II

Reiteradamente hemos expresado que este Tribunal tiene el poder inherente y exclusivo para admitir abogados a la práctica de la profesión. In re Gervitz Carbonell,

162 D.P.R. 665, 699 (2004); In re Bosch, 65 D.P.R. 248 (1945); Ex parte Jiménez, 55 D.P.R. 54 (1939). En virtud de ese poder inherente, tenemos la facultad de reinstalar abogados que han sido desaforados. In re Ramírez de Arellano, 173 D.P.R. 822 (2008); In re Colton Foltán I, 154 D.P.R. 466 (2001).

Al analizar si procede una solicitud de reinstalación de un abogado que ha sido desaforado, la cuestión a considerar no es si el peticionario ha sido suficientemente castigado, sino si en el momento de la solicitud goza de tal reputación que justifique permitirle de nuevo que ejerza la profesión. En otras palabras, lo importante es la integridad moral del peticionario en la actualidad. In re Pacheco Nieves, 135 D.P.R. 95, 99 (1994); In re Rivera Cintrón, 120 D.P.R. 706, 708 (1988); In re Cardona Vazquez, 112 D.P.R. 686, 689 (1982); In re González, 60 D.P.R. 94, 97-98 (1942); In re Figueroa Maestre, 38 D.P.R. 955 (1928); In re Torregrosa, 34 D.P.R. 312 (1925).

En In re Pacheco Nieves, supra, pág. 98, mencionamos que "una persona que genuinamente se entiende inocente de unos hechos delictivos que le fueron imputados en el pasado no debe ser obligada a 'aceptar' su culpabilidad como condición sine qua non para su readmisión a la profesión". Al aplicar tácitamente la doctrina esbozada en Pacheco Nieves, supra, hemos ordenado la readmisión de abogados desaforados convictos de delitos que implican depravación moral y que no se arrepienten de la conducta

que dio lugar al desaforo. Véanse In re Farinacci García, 163 D.P.R. 688 (2005); In re Malavet Rodríguez, 135 D.P.R. 823 (1994).

En In re Malavet Rodríguez, id., readmitimos al Sr. José Malavet Rodríguez, quien fue hallado culpable en la Corte Federal para el Distrito de Puerto Rico de ayudar y alentar ("aiding and abetting") a otras personas a presentar documentos fraudulentos y declaraciones falsas en solicitudes de pasaportes. En aquel momento reinstalamos al señor Malavet Rodríguez al ejercicio de la abogacía aunque no se arrepintió de lo que hizo. In re Malavet Rodríguez, id., pág. 833.

Por otro lado, en Farinacci García, supra, reinstalamos a un abogado que se declaró culpable de "la comisión de los delitos graves de transportación al extranjero de dinero robado y de conspiración". Id., pág. 688. El Juez Asociado señor RIVERA PÉREZ señaló en su Opinión disidente, a la cual se unió el Juez Asociado señor CORRADA DEL RÍO, que "[e]l peticionario no demuestra arrepentimiento por sus actuaciones constitutivas de delito grave. Justifica estas actuaciones a base de una alegada situación y la presencia de unas condiciones en Puerto Rico para la época en que incurrió en tal conducta delictiva." Íd., págs. 697-698. Aun así reinstalamos al señor Farinacci García aunque no mostró arrepentimiento por la conducta que dio lugar al desaforo.

Por otro lado, en In re Colton Foltán I, supra, readmitimos al Sr. Pedro Colton Foltán al ejercicio de la

abogacía, luego de que decretamos su separación indefinida junto al peticionario Figueroa Vivas en In re Colton Foltán, supra. Al así proceder, expresamos:

> Al solicitar su rehabilitación un abogado que ha sido desaforado, la médula de la cuestión no es si dicho abogado ha expiado su culpa ni si ha sido suficientemente castigado, sino más bien si en el momento de la solicitud él goza de tal reputación que justifique su readmisión a dicho ejercicio, es decir, si su integridad moral amerita su rehabilitación.

> In re Colton Foltán I, supra, pág. 471, citando In re Charneco, 72 D.P.R. 897, 898 (1951).

Es decir, en el proceso de reinstalación "no se litiga nuevamente el asunto o asuntos que previamente motivaron la suspensión del abogado. Sólo se evalúa si la conducta de un abogado suspendido, posterior a la suspensión, lo hace acreedor de su reinstalación". S. Steidel Figueroa, Ética y responsabilidad disciplinaria del abogado, Publicaciones J.T.S., 2010, pág. 370-371. Véase In re Carbone Rosario, 166 D.P.R. 396, 398 (2005).

Por otra parte, en casos de readmisión al ejercicio de la profesión, el peso de la prueba recae sobre la persona que solicita la reinstalación. Esta "debe demostrar que su conducta moral ha variado hasta alcanzar el grado y medida necesarios en que ese atributo resulta indispensable para estimarle capacitado para descargar intelectual y éticamente los deberes y obligaciones que se esperan de todo abogado". In re Cardona Vázquez, supra, pág. 689.

III

Aparte de la jurisprudencia antes citada, en nuestra jurisdicción no contamos con un cuerpo de reglas que regule lo relativo al proceso de reinstalación de los abogados desaforados. Para suplir esa laguna, es necesario que acudamos a nuestras decisiones anteriores y al Derecho comparado.

La American Bar Association (ABA) publicó en 1989 las Reglas Modelo para la Aplicación de los Procesos Disciplinarios contra Abogados. Center for Professional Responsability, Model Rules for Lawer Disciplinary Enforcement, Illinois, American Bar Association, 2007. Dentro de dicho cuerpo de reglamentación, la Regla 25, inciso (E) (Regla Modelo 25(E) de la ABA), trata sobre los criterios a considerarse cuando se solicita una reinstalación luego de un periodo de suspensión de más de seis meses. Íd., pág. 25. La regla dispone en lo pertinente:

> Un abogado solo puede ser reinstalado o readmitido si reúne cada uno de los siguientes criterios, o si presenta razones suficientes y válidas que justifiquen su reinstalación o readmisión:
>
> (1) El abogado ha cumplido plenamente con los términos y condiciones de las órdenes disciplinarias anteriores.
>
> (2) El abogado no ha participado ni intentó participar en la práctica no autorizada de la profesión durante el período de suspensión o inhabilitación.
>
> (3) ...
>
> (4) El abogado reconoce la ilicitud y la

gravedad de las faltas cometidas por las que se le suspendió.

(5) El abogado no ha incurrido en una falta de conducta profesional desde la suspensión o inhabilitación.

(6) A pesar de la conducta por la que fue sancionado el abogado, éste tiene la honestidad y la integridad necesaria para ejercer la abogacía.

(7) El abogado se ha mantenido informado sobre la evolución del Derecho y es apto para practicar ante los tribunales (traducción nuestra).

(8) ... [1]

---

[1] Adviértase que no abordamos el tercer criterio porque éste trata sobre la incapacidad física y mental del abogado, tema que no tenemos ante nuestra consideración. Tampoco discutimos el octavo criterio por entender que no está en armonía con nuestros pronunciamientos anteriores en materia de reinstalación. Sin embargo, presentamos en su totalidad el texto original en inglés:

"*RULE 25. REINSTATEMENT AFTER SUSPENSION FOR MORE THAN SIX MONTHS AND READMISSION*

*(A)...*

*(E)  Criteria for Reinstatement and Readmission.*

*A lawyer may be reinstated or readmitted only if the lawyer meets each of the following criteria, or, if not, presents good and sufficient reason why the lawyer should nevertheless be reinstated or readmitted:*

*(1) The lawyer has fully complied with the terms and conditions of all prior disciplinary orders except to the extent that they are abated under Rule 26.*

*(2) The lawyer has not engaged nor attempted to engage in the unauthorized practice of law during the period of suspension or disbarment.*

*(3) If the lawyer was suffering under a physical or mental disability or infirmity at the time of suspension or disbarment, including alcohol or other drug abuse, the disability or infirmity has been removed. Where alcohol or other drug abuse was a causative factor in the lawyer's misconduct, the lawyer shall not be reinstated or readmitted unless:*

(continúa...)

Lo mismo que disponen estos criterios surge de nuestra jurisprudencia. Por eso, la Regla Modelo 25(E) nos sirve de ayuda para evaluar la solicitud de reinstalación del peticionario Figueroa Vivas. El primer criterio busca asegurarse de que el abogado desaforado cumpla cabalmente con las órdenes que emita el organismo que ejerce la función disciplinaria. Como mencionamos en Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599, 631 (1993), los abogados son "funcionarios del tribunal" y deben obediencia a éste. De igual forma, el Canon 9, 4 L.P.R.A. Ap. IX, exige que los abogados mantengan hacia los tribunales una conducta que "se caracterice por el mayor respeto". Al adoptar el primer criterio, no hacemos otra

---

*(a) the lawyer has pursued appropriate rehabilitative treatment;*

*(b) the lawyer has abstained from the use of alcohol or other drugs for at least [one year]; and*

*(c) the lawyer is likely to continue to abstain from alcohol or other drugs.*

*(4) The lawyer recognizes the wrongfulness and seriousness of the misconduct for which the lawyer was suspended or disbarred.*

*(5) The lawyer has not engaged in any other professional misconduct since suspension or disbarment.*

*(6) Notwithstanding the conduct for which the lawyer was disciplined, the lawyer has the requisite honesty and integrity to practice law.*

*(7) The lawyer has kept informed about recent developments in the law and is competent to practice.*

*(8) In addition, a lawyer who has been disbarred must pass the bar examination and the character and fitness examination."*

cosa que reafirmar la norma plasmada en el Canon 9 y en Ramos Acevedo v. Tribunal Superior, supra. Véase, además, el Canon 38 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.

El segundo criterio tiene como propósito asegurar que el abogado desaforado no practique la profesión ilícitamente durante el término de la sanción. Anteriormente en In re Gordon Menéndez I, 171 D.P.R. 210 (2007), sancionamos a un abogado que mientras estaba suspendido de la abogacía, creó la impresión en la ciudadanía de que ejercía la profesión. Por tal motivo, concluimos que el licenciado Gordon Menéndez "estuvo en el umbral de la comisión del delito de la práctica ilegal de la profesión de abogado". Íd., pág. 219. Así pues, al adoptar el segundo criterio nos aseguramos de que la situación lamentable que ocurrió en In re Gordon Menéndez I, supra, no vuelva a suceder.

El cuarto criterio de la Regla Modelo 25(E) requiere que la persona que solicita la reinstalación reconozca la seriedad y consecuencias de la conducta que lo llevó al desaforo. Véase In re Roundtree, 503 A.2d 1215, 1217 (D.C. App. 1985). Aunque la regla no exige que la persona se arrepienta de la conducta que dio lugar al desaforo, sí es preciso que reconozca su gravedad. Al reconocer la seriedad de la conducta, la persona disciplinada tiene la oportunidad de reflexionar sobre ella y tomar las medidas necesarias para que no vuelva a suceder.

Con ese mismo enfoque, en In re Cruz Disdier, 73 D.P.R. 346, (1952) reinstalamos al Sr. Silvestre Cruz Disdier a la profesión legal. En aquella ocasión, sopesamos el testimonio del señor Cruz Disdier. Al preguntársele si había analizado y apreciado la gravedad de los actos, el señor Cruz Disdier mencionó:

> Eso me ha hecho pensar detenidamente. Me ha hecho meditar mucho y he sufrido terriblemente las consecuencias de mi separación y si el Tribunal me concede otra vez volver al ejercicio, lo haría únicamente cumpliendo con las leyes; resolvería todos los asuntos de mi mejor buena fe, sin perjuicio para nadie, sin perjudicar a nadie, solamente por el medio de ayudar a mi familia.

Íd., pág. 352.

Manifestó, además, que se sentía arrepentido así como moral y espiritualmente reformado y regenerado. Íd. Como se aprecia, aunque no señalamos expresamente que reconocer la gravedad de la conducta que dio lugar al desaforo fuese un requisito imprescindible para demostrar rehabilitación, ese factor fue determinante para ordenar la reinstalación del abogado. Al adoptar el cuarto criterio de la Regla Modelo 25(E), reafirmamos el análisis que utilizamos en In re Cruz Disdier, id., porque es medular para demostrar la rehabilitación del abogado que solicita reinstalación. Reafirmamos también, como dijimos en In re Pacheco Nieves, supra, que aunque no se puede exigir la aceptación de culpa como requisito sine qua non para la readmisión de un abogado, sí se le exige que esté rehabilitado. Ese proceso comienza, de ordinario, cuando el solicitante acepta su

responsabilidad por los hechos que llevaron a su desaforo. In re Pacheco Nieves, id.

El quinto criterio de la Regla Modelo 25(E) busca asegurarse de que la persona que solicita la reinstalación no ha transgredido los contornos éticos durante el tiempo de suspensión. De igual modo, por ejemplo, hemos señalado que el abogado que practica la profesión legal mientras está suspendido de su ejercicio incurre en "un desafío insólito a nuestro poder inherente para reglamentar la profesión". In re Gordon Menéndez I, supra, pág. 215. Al adoptar el quinto criterio, reafirmamos el Preámbulo del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, que impone a los abogados "el deber de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad".

El sexto criterio tiene como propósito asegurarse de que la persona que solicite la reinstalación sea honesta e íntegra. Se puede apreciar que este sexto criterio es el mismo que hemos exigido desde hace años en nuestra jurisdicción, a saber, que la persona que solicite la reinstalación goce de tal reputación en la comunidad que justifique su admisión de nuevo al ejercicio de la abogacía. Véanse In re Pacheco Nieves, supra, pág. 99; In re Rivera Cintrón, supra, pág. 708; In re González, supra, págs. 97-98, citando a In re Torregrosa, supra; In re Figueroa Maestre, supra; reiterado en In re Cardona Vazquez, supra, pág. 689. Como toda persona desaforada que

solicita reinstalación debe cumplir con esta normativa, avalamos el sexto criterio de la Regla Modelo 25(E).

Finalmente, acogemos el séptimo criterio de esa regla, cuyo propósito es asegurar que la persona que solicita reinstalación pueda desempeñar con diligencia los retos que representa ejercer la profesión legal. En realidad, hemos aplicado este criterio en el pasado al ordenar que abogados desaforados tomen un repaso de reválida antes de que vuelvan a ejercer la profesión legal. Véanse In re Cotto Vives, 175 D.P.R. 773 (2009); In re Ramírez de Arellano, supra.

Luego de exponer claramente y sin ambages el Derecho aplicable, pasemos a evaluar los hechos de este caso.

IV

A pesar de que los hechos que acaecieron el 25 de julio de 1978 en el Cerro Maravilla y su encubrimiento posterior fueron funestos y constituyen una página negra en la historia de Puerto Rico, es preciso tener presente que nuestra tarea no es pasar juicio nuevamente sobre ellos. Ya lo hicimos en In re Colton Foltán, supra. En cambio, tenemos el deber insoslayable de aplicar la doctrina que con el pasar de los años hemos construido sobre el proceso de readmisión, que coincide con los criterios de readmisión al ejercicio de la abogacía que contiene la Regla Modelo 25(E) de la ABA.

En el caso que nos ocupa, la Comisión de Reputación concluyó que el señor Figueroa Vivas presentó, a través de su testimonio y el de sus testigos, evidencia de que goza

actualmente de buena reputación en la comunidad. Véase _Informe de la Comisión de Reputación_, pág. 7. De esta forma, el peticionario cumple con la norma que establecimos en _In re Charneco_, _supra_, pág. 898 e _In re Colton Foltán I_, _supra_, pág. 471, y con el quinto criterio de la Regla Modelo 25(E) de la ABA.

Por otra parte, la Comisión de Reputación añade al análisis criterios de evaluación que no hemos considerado anteriormente. En específico, menciona que existen jurisdicciones que consideran la naturaleza y gravedad de los hechos que dieron lugar al desaforo a la hora de decidir si readmiten al disciplinado a la profesión. Véase _Informe de la Comisión de Reputación_, pág. 7.

No obstante, este Tribunal nunca ha usado ese criterio a la hora de reinstalar a un abogado. En cambio, manifestamos de manera diáfana que el elemento principal que debemos auscultar es si el peticionario goza de buena reputación en la comunidad al momento de solicitar la reinstalación. _In re Carbone Rosario_, _supra_. Específicamente, en _In re Colton Foltán I_, _supra_, págs. 471- 472, rechazamos el criterio que propone la comisión.

Además, el señor Figueroa Vivas lleva casi veinte años sin ejercer la profesión. Como es sabido, la falta de mejoramiento intelectual en el campo legal no se supera fácilmente. El Derecho evoluciona constantemente y es necesario que los abogados se mantengan al día en su desarrollo. Actualmente el peticionario no cumple con el sexto criterio de la Regla Modelo 25(E) de la ABA, similar

a lo que hemos exigido a otros abogados que solicitan reinstalación. No obstante, si el peticionario toma un curso de reválida estatal, cumpliría con la normativa expuesta.

Por otro lado, del expediente se desprende que el peticionario ha cumplido con el primer, segundo y cuarto criterio de la Regla Modelo 25(E) de la ABA, similares a nuestra normativa jurisprudencial. Es decir, el peticionario cumplió plenamente con nuestras órdenes disciplinarias, no ha practicado ilícitamente la profesión ni ha violentado las normas del Código de Ética Profesional, 4 L.P.R.A. Ap. XI.

Por otra parte, la Comisión de Reputación expresó en su informe que al peticionario "no [le] cobija la posibilidad de indicar que se siente genuinamente inocente y por lo tanto, [que] no se le puede exigir arrepentimiento". Informe de la Comisión de Reputación, pág. 8. En otras palabras, la Comisión de Reputación parece exigir al peticionario como condición *sine qua non* para su reinstalación a la profesión, que muestre arrepentimiento por sus acciones. Expresamos justamente lo contrario en In re Pacheco Nieves, supra.

La Comisión de Reputación intentó diferenciar el caso de In re Pacheco Nieves, supra, al expresar que en la situación que ahora nos ocupa "el peticionario [Figueroa Vivas] no fue separado de la profesión por cometer un delito que implica depravación moral sino por incumplimiento de los deberes de diligencia y

competencia". Informe de la Comisión de Reputación, pág. 8. Es decir, la Comisión de Reputación pretende reducir la aplicación de la doctrina pautada en In re Pacheco Nieves, supra, a situaciones en que la persona disciplinada fue convicta de delito. No podemos aceptar la tesis de la Comisión de Reputación. Es insostenible e ilógico que a un abogado a quien se le encuentra responsable ética y penalmente por unos hechos delictivos no se le exija tener que arrepentirse de su conducta pero al que solo se le procesa éticamente y no penalmente sí se le obligue. Reiteramos que no es un requisito *sine qua non* mostrar arrepentimiento por los hechos que dan margen a la acción disciplinaria para que proceda la reinstalación.

El arrepentimiento, o falta de éste, es evidencia como cualquier otra a ser considerada al evaluar el carácter del abogado desaforado y determinar las repercusiones probables de su solicitud de reinstalación. In re Malavet Rodríguez, supra, págs. 830-831. Ahora bien, el tercer criterio de la Regla Modelo 25(E) de la ABA recoge nuestro requerimiento jurisprudencial de que la persona que solicita la reinstalación reconozca la ilicitud y gravedad de las faltas por las que se le suspendió, aunque no se arrepienta de su conducta o insista en su inocencia.

En este caso, el señor Figueroa Vivas admite que fue muy cándido al creer ciegamente la versión de los policías. Sin embargo, el peticionario no reconoce la gravedad e ilicitud de la conducta que determinamos

probada, al coaccionar testigos en la investigación del Cerro Maravilla y al destruir una declaración jurada. En otras palabras, solo reconoció la gravedad de parte de la conducta que lo llevó al desaforo, no de su totalidad. Al así actuar, el peticionario no cumple con el tercer criterio esbozado en la Regla Modelo 25(E) de la ABA y en nuestra jurisprudencia, para ser reinstalado.

En _In re Colton Foltán I_, _supra_, reinstalamos al licenciado Colton Foltán a la profesión legal, luego que fuera desaforado por la misma serie de hechos por los cuales desaforamos al peticionario Figueroa Vivas. Sin embargo, al evaluar la solicitud de reinstalación sopesamos el hecho de que el señor Colton Foltán estaba "seriamente arrepentido de la conducta antiética en que incurrió y por la cual fue disciplinado...". _In re Colton Foltán I_, _supra_, pág. 470.

Cuando el abogado suspendido reconoce la gravedad e ilicitud de la conducta que dio lugar al desaforo, nos coloca en posición de auscultar si realmente está rehabilitado para ejercer la profesión legal. Aunque el arrepentimiento no es una condición _sine qua non_ para reinstalar a un abogado, sí es evidencia de que el abogado desaforado reconoció la gravedad de la conducta por la cual se le disciplinó. Como señaló el Juez Asociado señor REBOLLO LÓPEZ en su Voto particular disidente en _In re Farinacci García_, _supra_, págs. 711-712 esc. 1, la rehabilitación de quien solicita reinstalación, "de

ordinario, comienza al aceptarse responsabilidad por los hechos que se le imputan".

V

Al analizar el expediente, resulta forzoso concluir que el señor Figueroa Vivas no presentó prueba clara, robusta y convincente de que cumple con todos los requisitos para que proceda su reinstalación a la profesión legal.

El señor Figueroa Vivas probó satisfactoriamente que actualmente goza de buena reputación en la sociedad. En específico, presentó el testimonio de más de diez personas y la gran mayoría de ellas testificaron que el señor Figueroa Vivas goza actualmente de buena reputación, hecho que también aceptó la Comisión de Reputación en su informe. Solo el licenciado Escribano Román expresó que el señor Figueroa Vivas no está apto para ejercer la profesión. Sin embargo, el licenciado Escribano Román no conoce personalmente al señor Figueroa Vivas ni tampoco le consta su reputación en la comunidad. Su oposición se basa en la intervención del peticionario Figueroa Vivas en el encubrimiento de lo que sucedió en el Cerro Maravilla el 25 de julio de 1978.

Aunque el peticionario no se arrepiente de lo que hizo, sí reconoció que no actuó de la mejor forma. Además, señaló que de haber actuado con más suspicacia habría detectado la mentira de los policías. Sin embargo, el peticionario no reconoce la gravedad de la totalidad de los hechos que dieron lugar al desaforo. No acepta que coaccionó testigos ni que destruyó evidencia. Ya mencionamos que este criterio es importante, pues

demuestra que la persona está realmente rehabilitada para ejercer la profesión.

El peticionario no reconoce la gravedad de la conducta que dio lugar al desaforo. Al proceder de ese modo, siembra dudas sobre si realmente está rehabilitado y cuenta con la entereza moral para ejercer la abogacía. Independientemente de que no se arrepienta de lo que hizo, el peticionario debe reflexionar sobre la ilicitud y gravedad de la conducta que se le imputó y probó en In re Colton Foltán, supra. No olvidemos que

> "[h]ay profesiones que no se compadecen con los 'términos medios', con las 'medias tintas' en su ejercicio; es tal la excelsitud de su ministerio, la delicadeza de su cometido, la trascendencia de su profesión, que ni la más leve nota de humana parcialidad puede empañar la fulgencia de su prestigio".
>
> In re Malavet Rodríguez, supra, pág. 824, Opinión disidente del Juez Asociado señor NEGRÓN GARCÍA, a la cual se unió la entonces Juez Asociada señora NAVEIRA DE RODÓN, citando a F. Soto Nieto, Compromiso de Justicia, Madrid, Ed. Montecorvo, 1987, págs. 29-30.

Considerado todo lo anterior, declaramos no ha lugar la moción de reconsideración del peticionario Figueroa Vivas.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

ÁNGEL FIGUEROA VIVAS                    TS-4270

SENTENCIA

En San Juan, Puerto Rico, a 29 de junio de 2011.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente Sentencia, se declara no ha lugar la moción de reconsideración del peticionario Figueroa Vivas.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal. El Juez Presidente señor Hernández Denton y la Juez Asociada señora Rodríguez Rodríguez concurren con la decisión que emite este Tribunal de denegar la reinstalación a la abogacía solicitada por el Sr. Ángel Figueroa Vivas. Entienden que las razones expuestas en el Informe de la Comisión de Reputación de Aspirantes al Ejercicio de la Abogacía, presentado ante nuestra consideración luego de que dicho cuerpo celebrara tres vistas y recibiera el testimonio de decenas de personas, ameritan la denegatoria de la solicitud del señor Figueroa Vivas. Además, se reiteran en los criterios para la readmisión a la abogacía expuestos en el voto particular disidente del Juez Presidente en In re: Colton Fontán I, 154 D.P.R. 466, 480-487 (2001).

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo